# GORDON C. GASKINS *v.* STATE OF MARYLAND

[No. 330, September Term, 1968.]

*Decided May 27, 1969.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Karl H. Goodman* and *Jack B. Rubin* for appellant.

*Bernard L. Silbert, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Samuel A. Green, Jr., State's Attorney for Baltimore County, L. Robert Evans, Deputy State's Attorney for Baltimore County,* and *Gary Huddles, Assistant State's Attorney for Baltimore County,* on the brief, for appellee.

MURPHY, C.J., delivered the opinion of the Court.

Appellant was found guilty of first degree murder by a jury in the Circuit Court for Howard County, and was thereafter sentenced by the court to life imprisonment under the jurisdiction of the Department of Correction. He contends on this appeal that the court erred when it refused to instruct the jury, as requested by him, that (1) "A person accused of crime may not be convicted on the uncorroborated testimony of an accomplice," and (2) that the "Testimony of an accomplice has been held to be fraught with weakness due to the effect of fear, threats, hostility, motives or hope of leniency and the law requires that such testimony be closely scrutinized and accepted with caution."

There was evidence from which the jury could find that shortly before noon on August 2, 1967, Walter Groebel, manager of the Suburban Country Club in Baltimore County, returned from the bank to the clubhouse with a weekly payroll amounting to more than $7,000.00. While in front of the clubhouse he was robbed of the payroll and, in the course of a struggle, was shot. At the hospital about an hour later, Groebel described his assailant to Sergeant Louis Roemer of the Baltimore County Police Bureau as a light-skinned Negro man, 5' 10" to 6' tall, approximately 180 pounds, having long, red hair and wearing a rust colored shirt; and that he had arrived by automobile and another Negro man, wear-

ing a hat, had been driving. A short time thereafter Groebel died as a result of the gunshot wound.

Gary Beach, a college student and summertime maintenance employee of the Suburban Country Club, testified that he was working in a sandtrap about 30 yards from the clubhouse entrance at 11:20 a.m. when he saw Groebel drive his car up to the clubhouse doorway; that he returned to his work and soon thereafter heard a gunshot; that when he looked up in the direction of the clubhouse, he saw a Negro man walk toward and enter the passenger's side of a black 1963 or 1964 Oldsmobile that had not been there when Groebel arrived; that this man was about 6' 1" tall, had a medium complexion and wore what appeared to be a "reddish" scarf or long hair or a wig and a "yellowish-gold color" shirt; and that the Oldsmobile was driven away "fairly quick" by another Negro man with a darker complexion who had remained seated in the driver's seat. The following day, Beach was shown a black 1963 Oldsmobile that had been abandoned and set afire in Baltimore City. Beach stated that "[i]t's the same type" as was used in the robbery.

Martin Moser, Jr., a high school student, testified that before noon on August 2, while riding on his bicycle, he had passed within five or six feet of a car stopped in front of the Suburban clubhouse. He stated that the brake lights of the car were on and there were two Negro men in the front seat, the passenger having the lighter complexion of the two and also having red hair. When he returned from parking his bicycle, he discovered that Groebel had just been shot.

William Gardiner testified, under a grant of immunity from prosecution, that he met appellant for the first time in July of 1967; that appellant told him at that time that he heard that he (Gardiner) was a "good driver" and "could be trusted"; that "a job was being lined up and I would be interested in it"; that it "was a payroll job" that "was being lined up from the inside"; and that the following day, which was the last Wednesday in July, they parked near the Suburban Country Club and walked

onto and around the grounds together. Gardiner further testified that appellant picked him up in a 1963 or 1964 black Oldsmobile on the morning of August 2, and at that time had a red wig and a gold colored shirt; that they drove to the Suburban Country Club and parked near the front entrance, at which time he (Gardiner) took over the driving duties and appellant put on the wig and shirt; that they proceeded to the Club's rear entrance and arrived at the clubhouse directly after Groebel's arrival; that while he (Gardiner) remained in the car, appellant "jumped out" and grabbed the payroll, at which time a shot was fired; and that when appellant returned to the car with the money, he had a pistol in his hand. Gardiner testified that he and appellant then made good their escape and agreed to meet again that night to split the money among what appellant told him were four persons. That night they purchased some gasoline and set the Oldsmobile on fire on the streets of Baltimore City. Gardiner stated that he never received a share of the money.

Franklin Lassiter, a former employee of the Suburban Country Club, also testified under a grant of immunity from prosecution. He stated that he and appellant met in front of appellant's house in July of 1967, at which time they conversed about "finances and money." He mentioned to appellant that the Suburban Country Club had a large payroll of $4,000.00 or $5,000.00 every week. When they next met a week or two later, appellant asked for more information about the country club and told him that "the first chance he gets he was going to look at it, you know, and see what he thought about it," but "he didn't say [for] exactly what purpose he was interested." A few days later they again met and appellant told him that "the first chance he'd get, he said he was going to get it, so I said all right." He testified that on Wednesday night, August 2, he approached appellant on the street and told him that "I heard about that club that got robbed" and "I heard that the man had died." He stated that Gaskins replied to him that "it wasn't supposed to

happen that way, or the man gave him a struggle, or he wouldn't let the money go, or something at the time —it was like that."

It is, of course, elementary that an accused may not be convicted of a crime solely upon the uncorroborated testimony of an accomplice. *Veney v. State,* 251 Md. 159; *Hopkins v. State,* 5 Md. App. 284; *Kitt v. State,* 2 Md. App. 306. There must be corroborative evidence supporting the testimony of the accomplice as to some of the material facts, tending to show that the accused was either identified with the perpetrators of the crime or participated in the commission of the crime itself. *Middleton v. State,* 6 Md. App. 380; *Johnson v. State,* 4 Md. App. 648; *Boone v. State,* 3 Md. App. 11. As so forcefully stated in *Watson v. State,* 208 Md. 210, 217, "[t]he reason for the rule requiring the testimony of an accomplice to be corroborated is that it is the testimony of a person admittedly contaminated with guilt who admits his participation in the crime for which he particularly blames the defendant, and it should be regarded with great suspicion and caution, because otherwise the life or liberty of an innocent person might be taken away by a witness who makes the accusation either to gratify his malice or to shield himself from punishment, or in the hope of receiving clemency by turning State's evidence." And as we noted in *Burley v. State,* 5 Md. App. 469, the fact that a witness is an accomplice must like any other fact be shown by proof, the burden thereof being on the defendant who asserts it, although such proof need only be by a preponderance of the evidence and not beyond a reasonable doubt. We said in *Burley* at page 473:

> "* * * When the evidence relating to whether or not a witness is an accomplice is capable of being determined either way and justifies different inferences in respect thereto, *the question is for the determination of the trier of fact and in a jury case should be submitted to the jury with proper instructions.*" (Emphasis supplied.)

We think it too clear to require discussion that there was evidence before the jury from which it could properly conclude that Gardiner was a principal, either in the first or second degree, and, as such, was an accomplice upon whose uncorroborated testimony appellant could not be convicted. See *Vincent v. State,* 220 Md. 232; *Butina v. State,* 4 Md. App. 312; *Boone v. State, supra; Thomas v. State,* 2 Md. App. 502. Similarly, there was evidence before the jury from which it could have concluded, at the least, that Lassiter was an accessory before the fact, and, as such, also an accomplice. See *Watson v. State, supra; Burley v. State, supra.*

As Gardiner was the State's principal witness against the appellant and as his testimony, whether considered alone or together with that of Lassiter, constituted formidable evidence of appellant's guilt, it was imperative that appellant obtain from the trial judge, at the least, a jury instruction that he could not be convicted on the uncorroborated testimony of an accomplice; and that the jury, in weighing the testimony of an accomplice, should do so with great suspicion and caution for the reasons set forth in such cases as *Watson v. State, supra.* While appellant requested that such instructions be given to the jury, the trial judge declined to so instruct and in no way covered the substance of such requested instructions. He instructed the jury, *inter alia,* that it could take into consideration the witnesses' "interest or lack of interest in the outcome of the case, and all of the circumstances surrounding the case"; that the jury could "reject any evidence which you consider improbable or unreliable"; that the jury was "The sole judges of the weight of the evidence and the credit to be given to the witnesses"; that the jury "may decide the questions involved on any evidence which your common sense tells you is trustworthy and reliable"; and that "on determining the believability of the testimony of William Gardiner and Franklin Lassiter, you may consider in that regard their prior convictions for infamous crimes insofar as such prior convictions may affect the credibility of their testimony."

At the conclusion of the court's charge to the jury, the appellant specifically excepted to the court's failure to grant his requested instructions, as heretofore set forth, and made a further request for a jury instruction as follows:

> "* * *[W]e feel that it's most important for the Jury to be instructed that they can determine that both Gardiner and Lassiter are, whether or not they are accomplices and that they should be informed of the accomplice testimony rule. They should be able to determine whether, not only whether they are accomplices but if they are accomplices, that there is sufficient corroboration."

The trial judge declined to amplify his charge.

We have held time and time again that it is incumbent upon the trial judge, when requested in a criminal case, to give an advisory instruction to the jury on every essential point of law supported by the evidence. See *Halcomb v. State*, 6 Md. App. 32; *Gordon v. State*, 5 Md. App. 102; *Malloy v. State*, 4 Md. App. 420; *Huber v. State*, 2 Md. App. 245; *Tipton v. State*, 1 Md. App. 556; Maryland Rule 756b. As we said in *Halcomb* at page 39, the function of a jury instruction is, in part, to declare what rule of law will apply to any set of facts which may be found from the evidence. The instructions requested by appellant were clearly applicable to the issues in the case and correctly stated the relevant principles of law. Not only was there evidence to support the theory or underlying rationale of the requested instructions, but such instructions were obviously intended to provide the essential underpinnings of appellant's defense. The court's failure to instruct the jury that it could not convict appellant on the uncorroborated testimony of an accomplice permitted it free reign to find appellant guilty on the testimony of an accomplice, whether or not corroborated. And since the court specifically told the jury in its instructions that it could de-

cide the question of appellant's guilt "on any evidence which your common sense tells you is trustworthy and reliable," failure to advise the jury that it could in no event convict on the uncorroborated testimony of an accomplice was, we think, particularly damaging to appellant's case.

In *Hardison v. State,* 226 Md. 53, an admitted accomplice in a larceny case testified for the State and implicated the three defendants. There was independent testimonial evidence in the case corroborative of the accomplice's testimony. The defendants requested the trial judge to instruct the jury as to the definition of an accomplice and with regard to the law applicable to the corroboration of an accomplice's testimony, but the trial court declined to do so. After noting that there were no instructions given with respect to the definition of an accomplice, nor any mention made of the necessity for or sufficiency of corroborative testimony required to convict, the Court of Appeals held (page 61) :

> "The refusal of the trial judge to inform the jury who, in law, are, and who are not, accomplices, * * * and the law with reference to the necessity for the corroboration of an accomplice's testimony constitutes reversible error. Testimony of an accomplice should be closely · scrutinized and juries should be cautioned, upon request, in the form of an advisory instruction that conviction cannot stand on accomplice's testimony alone, but that corroboration is necessary as to material points. * * *"

Unlike the facts in *Hardison,* appellant did not request an instruction as to the legal definition of an accomplice,[1] nor did he explicitly request the court to instruct the jury with respect to the degree of corroborative evidence required to support an accomplice's testimony.[2] But

---

1. See *Watson v. State, supra; Burley v. State, supra; Brown v. State,* 4 Md. App. 612; *Grimes v. State,* 4 Md. App. 607.
2. See *Middleton v. State, supra; Johnson v. State, supra; Boone v. State, supra.*

while it may have been better, for the sake of completeness, had the appellant requested such instructions, we do not think his failure to do so justified the trial court's refusal to grant the gist or substance of those instructions which he did request. And although the State virtually conceded at the trial that Gardiner was an accomplice, it maintained with vigor in its closing jury argument that Lassiter was not an accomplice, thus necessitating an instruction, in accordance with appellant's request, that it was the function of the jury to determine that question under appropriate instructions of the law relating to the "accomplice testimony rule." See *Burley v. State, supra.* We conclude, therefore, that the instructions actually requested by appellant were essential to his defense, correctly stated the applicable principles of law, and there was evidence to support the theory or underlying rationale thereof; and under the circumstances of this case, it constituted reversible error to omit the substance of such requested instructions from the court's charge to the jury—it being clear that the court's instructions to the jury, considered in their total context, did not adequately cover the subject matter of the requested instructions.[3] See *Avey v. State,* 249 Md. 385.

We think our conclusion is fortified by the State's argument, advanced for the first time on appeal, that the requested instructions were improper because as a matter of law, Gardiner was not an accomplice, as he did not agree to participate in an armed robbery culminating in a murder, but only in a simple unarmed robbery. A similar argument is advanced with respect to Lassiter's status as an accomplice. To so argue in the face of

---

3. It appears clear, from the trial judge's ruling denying appellant's motion for a judgment of acquittal, that he believed that there was corroborative evidence within the meaning of *Boone v. State, supra,* supporting the testimony of Gardiner and Lassiter, if these witnesses were in fact accomplices. And his conclusion in this respect may have precipitated his refusal to instruct the jury that it could not convict on the uncorroborated testimony of an accomplice. But this is a question ultimately for the jury to determine where it is the trier of facts. See *Reynolds v. State,* 219 Md. 319.

the evidence in the record indicates, we think, the desperation of the State's position on appeal, since, if anything, it might be concluded, as a matter of law, that Gardiner was an accomplice and, at the least, the question of Lassiter's status was clearly a jury question. See *Vincent v. State, supra; Butina v. State, supra; Coleman v. State,* 4 Md. App. 386; *Bradburn v. State,* 4 Md. App. 248.

> *Judgment reversed; case remanded for a new trial.*