## WILLIAM R. SUTTON *v.* STATE OF MARYLAND

[No. 13, September Term, 1970.]

*Decided November 4, 1970.*

The cause was argued before MURPHY, C.J., and ORTH and THOMPSON, JJ.

*Benjamin L. Brown* for appellant.

*Clarence W. Sharp, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Howard L. Cardin, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

William R. Sutton, the appellant, was convicted of first degree murder in a court trial in the Criminal Court of Baltimore. Judge Solomon Liss imposed a sentence of life imprisonment. On appeal, appellant presents two contentions: (1) Four of the witnesses against him were accomplices, whose testimony thus required corroboration. (2) On motion for a new trial, a witness called by the defense was improperly allowed to remain silent by claiming his fifth amendment rights under the Federal Constitution. Both contentions are meritless.

Briefly, the State's evidence showed that on the morning of February 28, 1969, Charles Jordan, Ronnie Brown, and Anita Rainey were riding in Jordan's Buick Riviera when they were hailed by two men, identified by Brown as being one Marshall Thomas and the appellant. A discussion ensued about getting hub caps for Jordan's car. Jordan claims appellant volunteered to get the hub caps while Brown testified that Jordan solicited the appellant to get the hub caps. Brown himself, having earlier ascertained who owned the car from which the hub caps were to be stolen, was against the stealing of them and told the other parties not to participate.

Marshall Thomas, the appellant's companion, admitted accompanying the appellant and participating in the theft of the hub caps. Two trips were made from Jordan's Riviera to the parked Riviera on Baker Street. On the first trip, appellant and Thomas procured some but not all of the hub caps. On the second trip, they returned either to get the rest of the hub caps or the tools used in removing them. During the second trip, Thomas and appellant were interrupted by the victim, Edward Peters, who told them to leave the car alone. Appellant, according to Thomas, fatally shot Peters.

After the appellant and Thomas returned to Jordan's car following the shooting, someone made a statement to the effect that a person had been shot. Brown testified the appellant made the statement that he shot someone. Thomas admitted stating in the car that appellant had shot someone. No one in the car admitted seeing a gun. After the shooting, Jordan drove away and let his four passengers out at various locations. Jordan then returned home and later turned himself in to the police after he was aware they were looking for him.

In addition to the above, the State presented evidence from police officers and eyewitnesses, none of whom could identify the appellant. One Robert Lee testified he was standing with the victim when their attention was attracted by the sound of a hub cap hitting the ground. Peters, the victim, running after the two men who had

taken the hub caps from the parked automobile, was shot by a man who appeared not to be carrying any hub caps. Lee could not identify either man. One James Bayton briefly saw a man running with a gun but could not identify him.

Sergeant Joseph Nixon of the Baltimore City Police, while patrolling in the area of the homicide before it had occurred, observed two men running suspiciously in the 1800 block of Baker Street. Nixon watched the men get into a Buick Riviera with Maryland license number HG-3311. Although unaware that a crime had been committed, Nixon made notes of the license number and make of the car. Shortly thereafter, he received information over the police radio concerning the shooting in the 1800 block of Baker Street. Returning to the scene of the shooting, Nixon received a suspect's description matching his observations of one of the people in the Buick Riviera he had just seen. Tracing the registration of the car, he went to Jordan's home where he found the stolen hub caps and white powder suspected to be narcotics.

Appellant, testifying in his own behalf, claimed he was in a bar drinking at the time of the shooting. His alibi was corroborated by three of his brothers and the bartender. The defense also presented witnesses to impeach Jordan's credibility by showing animosity between Jordan and the appellant over Jordan's alleged cheating on a sale of narcotics several months earlier.

## I   Corroboration

Appellant first contends four of the principal witnesses against him, Charles Jordan, Ronnie Brown, Anita Rainey, and Marshall Thomas, were accomplices whose testimony would be insufficient to convict without adequate corroboration. The State responds that appellant has not preserved this point for appellate review under Md. Rule 1085 and that there was sufficient corroboration even though all of these witnesses were accomplices.

Although other witnesses corroborated the details of the crime, not a single word of the other witnesses' tes-

timony (those outside Jordan's car), identified the appellant with the crime or with the perpetrators thereof. General corroboration, not related to identity, is insufficient; otherwise a witness could be corroborated by giving his name and birth date. See *Spies v. State,* 8 Md. App. 160, 258 A. 2d 758.

In *Burley v. State,* 5 Md. App. 469, 472, 248 A. 2d 404, we reviewed the rules with respect to determination of who is an accomplice, *i.e.,* one who could have been convicted of the offense as a principal or as an accessory before the fact. With respect to the procedure to determine complicity, we recited that the burden of proving a witness was an accomplice rested upon the accused asserting it, although the proof need only be by the preponderance of the evidence to the satisfaction of the trier of the facts. The function of the Court of Special Appeals on appeal is a matter of the sufficiency of the evidence. We further reviewed the Maryland cases and recited that in a case tried before the court, we determine whether the court was clearly erroneous under Md. Rule 1086. In a case tried before the jury, we determine whether the court erred in "submitting the evidence to the jury". Md. Rule 755. We did not state whether a motion to acquit would, without more, preserve the question for appeal.[1]

The text writers and the cases hold that when the evidence is "incapable of any other inference than that the witness is an accomplice, no question for the jury is raised", Wigmore, *Evidence,* §2060 (1964 Pocket Supplement) citing *Hardison v. State,* 226 Md. 53, 172 A. 2d 407, as well as other cases. To the same effect see Wharton, *Criminal Evidence* § 446 and cases collected in 23 C.J.S. Criminal Law, § 796 (c) n. 38. We, therefore, see no reason to treat a motion to acquit, where the question involved is corroboration of an accomplice's testimony, any differently from any other motion to acquit. If the evidence is capable of only the construction that a wit-

---

1. See, however, *Burley v. State, supra,* n. 8 where we indicated the rule to be as hereinafter expressed.

ness is an accomplice, then his testimony must be corroborated. If there is no evidence the witness is an accomplice then his testimony need not be corroborated. If, on the other hand, there is conflicting evidence, but the record contains legally sufficient evidence to support a finding he was not an accomplice then we must affirm unless the court failed on request to give proper instructions. Of course, in a nonjury trial similar results would follow under the clearly erroneous rule. Md. Rule 1086. Although a definite rule has not been announced, this procedure is consistent with that followed by the Court of Appeals of Maryland and by this Court; most of the cases are collected in *Burley v. State, supra,* and in *Gaskins v. State,* 7 Md. App. 99, 253 A. 2d 759.

The situations of the four principal witnesses in the instant case will serve to illustrate the rules. The evidence is so clear Charles Jordan and Marshall Thomas were accomplices that the question of corroboration as to their testimony is before us under the clearly erroneous rule. If the criminal agency of the appellant depended solely on their testimony, we would be required to reverse because if their testimony is to be accepted at all, they were participants in the crime. On the other hand, Anita Rainey and Ronnie Brown were not participants and, therefore, not accomplices, if their testimony is accepted. We have no basis for holding the trial judge was clearly erroneous under Md. Rule 1086 when he accepted their testimony and found guilt, especially since he pointed out from the bench that the conviction must depend upon witnesses who "have a very real interest in the outcome of the case".

## II   Self-Incrimination

Appellant next contends that Charles Edward Brown, a witness called by defense on the hearing of the motion for a new trial, should not have been allowed to claim his constitutional right against self-incrimination. Assuming this action of the trial judge on a motion for new trial is properly before us, the record shows the trial judge

made a lengthy and detailed examination as to the application of the privilege against self-incrimination. The court found that although the witness was not charged with the same crime as the appellant, the prospective testimony which he would give could perhaps leave him in a position of having to answer self-incriminating questions. The witness could, therefore, properly decline to testify. Our review of the transcript indicates the privilege was asserted in good faith and with some reasonable basis for claiming it. *Boone v. State,* 3 Md. App. 11, 237 A. 2d 787. We cannot say the trial judge was in error.

*Judgment affirmed.*