473 A.2d 1329

**Billy Clayton RIVENBARK**

v.

**STATE of Maryland.**

**No. 1076, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

April 16, 1984.

---

1. *In re Nevitt,* 117 F. 448, 461 (8th Cir.1902).

Howard L. Cardin, Baltimore, with whom were Cardin & Gitomer, P.A., Baltimore, on the brief, for appellant.

Stephanie J. Lane, Asst. Atty. Gen., with whom were Stephen H. Sachs, Atty. Gen., Sandra A. O'Connor, State's Atty., for Baltimore County, Stephen Montanarelli and Douglas B. Pfeiffer, Asst. State's Attys. for Baltimore County, on the brief, for appellee.

Argued before LISS, WILNER and ALPERT, JJ.

LISS, Judge.

The appellant, Billy C. Rivenbark, was charged in the Circuit Court for Baltimore County with first degree murder and burglary. He was tried before a jury, convicted and sentenced to a term of life imprisonment for the murder conviction and to 20 years imprisonment for the burglary conviction, both terms to run concurrently. It is from these judgments that this appeal was filed.

Appellant contends that the trial court erred in:
(1) permitting improper rebuttal testimony to be offered by the State;
(2) denying appellant's requested instruction to be submitted to the jury on the issue of whether Shirley Wilson, a prosecution witness, was an accomplice;
(3) admitting hearsay evidence under the "conspiracy exception" to the hearsay rule; and
(4) finding that the evidence was sufficient to support the guilty verdicts.

(1)

The evidence in this case was presented through witnesses who fell into four categories:

(1) The witnesses who described the murder scene;

(2) Shirley Wilson, who described the appellant's criminal agency;

(3) Defense witnesses, who provided an "alibi"; and

(4) Rebuttal witnesses offered by the State.

The first category included six witnesses, two civilian witnesses and four police officers. The civilian witnesses testified concerning the victim, Katherine Buress, and the home where she lived and where the murder occurred. The four police officers testified they found Mrs. Buress's home ransacked and described finding the victim's body. They also described the physical evidence found by them at the murder scene. Shirley Wilson was the final witness produced by the State. She testified she was the sister-in-law of the appellant. At the time of the victim's death Wilson was living with Ronald Leroy Johnson and had been living with him since February of 1981. She stated that on occasion the appellant, his wife (Wilson's sister) and their daughter would visit her and Johnson at their residence. It was on one of those visits that Rivenbark and Johnson met for the first time.

Shirley Wilson testified that the victim was the aunt of Ronald Johnson and that she had met her on one occasion when they stopped in to wish Mrs. Buress a happy Mother's Day. She described her as an elderly woman who apparently was very wealthy and wore large diamonds. Ms. Wilson indicated Johnson had expressed a dislike for the victim and had stated that some day the diamonds would be his. Ms. Wilson then testified to conversations between Johnson and the appellant over a period of time, consisting principally of statements on the telephone made by Johnson, overheard by Wilson, to a person she believed to be the appellant. These conversations indicated that Johnson intended to burglarize a "dope dealer's home." Later Johnson indicated the victim

of the burglary was to be Katherine Buress.  On the day prior to the homicide, Johnson requested Shirley Wilson to give him something to cover his head.  She gave him a ski hat belonging to her son, from which he cut out two holes for eyes, and a space for his nose and mouth.  Later that evening Johnson asked Ms. Wilson for a pair of gloves. Ms. Wilson gave Johnson her gloves and he tore the black leather palms off them.  She stated she gave Johnson the gloves because he "was nasty with me, pushing me around and demanding them and I was frightened of him."  Ms. Wilson argued with Johnson and tried to talk him out of going out and committing the burglary.  She was upset, crying and worrying.

At about midnight on the night of the murder the appellant appeared at the door of Ms. Wilson's apartment and asked Johnson, "are you ready?" and Johnson replied, "as ready as I'll ever be."  Johnson and the appellant then left, taking Ms. Wilson's car for transportation.  They returned at 4:48 a.m.  Johnson was upset and becoming sick, and stated to Wilson that "something went wrong."  Wilson learned the next morning that Johnson's aunt was killed during the course of the burglary.  This information was furnished to her the next day at a tavern by Johnson and the appellant.  Wilson testified as follows concerning the disposition of the evidence in Johnson's possession:

Q   You went back there to talk to Ron; is that correct?

A   Yes.

Q   As a result of your going back there what did you see Ron do?

A   He had originally, earlier that day took and went out to the car, and at that time I didn't know what it was, and he brought it into the house in a brown bag.  He took a shovel or something, across to the woods, and he buried whatever it was in the bag, and then come back over. And I told him, I said, "Billy, make sure you get rid of the stuff."  He went back over to the woods, and he got it out of the woods, and he put them in, it was still in a brown bag, and put them out in the kitchen, and it was

the gloves, it had blood all over them, they were drenched in blood.

Q  Go ahead.  What else did he have?

A  The ski cap was in the bag.  He left them in the kitchen, and then asked me—I was in the living room, he asked me to get him a bag, and I got him a brown—a white shopping bag or a little garbage bag, and he took the stuff, and he went to go and put the brown bag inside the white bag, but I took the gloves and the hat, and took them out of the bag, and put them in the white bag.

Ms. Wilson admitted she had given two prior statements to law enforcement officers before she ultimately introduced appellant's name into the case.  The State rested its case in chief at this point and motions for judgment of acquittal were denied by the presiding judge.

The defense then called Toni Rivenbark, the wife of the appellant, who offered alibi evidence that appellant was home with her when the homicide occurred.  Two other alibi witnesses were produced by the defense.

After the close of the State's case in rebuttal, motions for judgment of acquittal were again made and denied by the trial judge.  The case was then submitted to the jury after instructions and argument.  Before the instructions were given to the jury, counsel requested that an instruction as to the definition of and legal significance of the law involving an accomplice be given to the jury.  The trial court refused to give such an instruction and exception was duly noted.  Guilty verdicts were returned and this appeal followed.

We shall consider first appellant's contention that the trial judge erred in refusing to instruct the jury on the relevant law as to corroboration of an accomplice's testimony.

The law as to accomplices is well settled in Maryland and was re-affirmed by the Court of Appeals in *Brown v. State*, 281 Md. 241, 378 A.2d 1104 (1977).

■ A conviction of a defendant may not rest upon the uncorroborated testimony of an accomplice. *Brown v. State, supra; Strong v. State,* 261 Md. 371, 275 A.2d 491 (1971); *Veney v. State,* 251 Md. 159, 246 A.2d 608 (1968); *Boggs v. State,* 228 Md. 168, 179 A.2d 338 (1962); *Mulcahy v. State,* 221 Md. 413, 158 A.2d 80 (1960) and *Watson v. State,* 208 Md. 210, 117 A.2d 549 (1955). In *Brown v. State, supra,* the Court of Appeals stated:

We granted certiorari and requested the parties to consider, ... whether the long-standing rule of our cases that a person accused of a crime may not be convicted on the uncorroborated testimony of an accomplice should be abandoned. [*Id.,* 281 Md. at 242, 378 A.2d 1104].

The Court continued:

We see as much need today, perhaps more so in view of the escalating prosecutorial trend freely to utilize accomplices as State witnesses, to retain the requirement that a person accused of a crime not be convicted on the uncorroborated testimony of an accomplice. [*Id.,* at 246, 378 A.2d 1104].

■ It is clear from a perusal of these cases that where the evidence reveals as a matter of law, that a witness is an accomplice, the testimony in order to support a conviction must be corroborated. The corroboration must be through some independent source and may be minimal so long as it tends to establish, with some degree of cogency, (1) the identity of the accused with the perpetrator of the crime or (2) the participation of the accused in the crime itself. In most of the cases decided by the Court of Appeals and this Court on the issue of corroboration, the principal question has been whether the evidence sufficiently established the necessary degree of corroboration. *See Turner v. State,* 294 Md. 640, 452 A.2d 416 (1982).

The factual situation in the case at bar presents a somewhat different question than that usually raised by the issue of corroboration of an accomplice's testimony. In this case, counsel for the appellant moved for a judgment of

acquittal, at the conclusion of all the evidence, on the ground that Shirley Wilson as a matter of law was an accomplice and that if this conclusion was correct there was insufficient evidence to corroborate her testimony. The trial judge denied the appellant's motion for acquittal, holding that Ms. Wilson was not an accomplice as a matter of law.

It was at this point that appellant's counsel requested the trial judge to instruct the jury on the law of accomplices and the necessity for corroboration of their testimony. An accomplice is one who knowingly, voluntarily, and with common criminal intent with the principal offender, unites with him in the commission of the crime either as a principal or an accessory before the fact. *Strong v. State, supra.*

*Burley v. State,* 5 Md.App. 469, 472, 248 A.2d 404 (1968), citing *Watson v. State, supra,* states, "the generally accepted test as to whether a witness is an accomplice is whether he himself could have been convicted for the offense, either as principal or accessory before the fact." [1] The burden of showing that a witness is an accomplice is on the accused. *Campbell v. State,* 221 Md. 80, 84–85, 156 A.2d 217 (1959). The party who accuses another of being an accomplice has the burden of proving his contention by a preponderance of the evidence. *Bennett v. State,* 283 Md. 619, 392 A.2d 76 (1978).[2]

---

**1.** At common law an accessory before the fact is a person who aids, abets, procures, commands, counsels, or otherwise encourages another to commit a crime but is not present when the crime is committed. *See Wimpling v. State,* 171 Md. 362, 189 A. 248 (1937). The only difference between a principal in the second degree and an accessory before the fact is that the former is present when the crime is committed and the other may not be. Wharton's Criminal Law (14th Ed.Sec. 32).

If a witness qualifies merely as an accessory after the fact, he is not usually regarded as an accomplice and hence his testimony need not be corroborated. Wharton's Criminal Law (14th Ed.Sec. 38).

**2.** In *Bennett v. State, supra,* the Court of Appeals, after considering, *In Re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed. 368 (1970); *Mullaney*

■ If there is no conflict in the evidence as to a witness's participation in a crime or where his participation is conceded, the question whether the witness is an accomplice is one of law for the trial judge to determine. Conversely, where there is a conflict in the evidence as to the witness's participation in the crime either as a principal or as an accessory before the fact, the question of whether he is an accomplice is one of fact for the jury to resolve.

In *Foster v. State*, 11 Md.App. 40, 46, 272 A.2d 810 (1971), we stated:

> We have held repeatedly that when evidence relating to whether a witness is an accomplice is capable of being determined either way and justifies different inferences in respect thereto, the question is for the determination of the trier of fact and in a jury case should be submitted to the jury with proper instructions. [Citations omitted].

*See Trovato v. State*, 36 Md.App. 183, 373 A.2d 78 (1977).

■ Whether a witness is an accomplice is a question which must be analyzed upon the specific facts of each case. In the case at bar there is evidence in the record that Shirley Wilson was present at a number of conversations which took place between Johnson and the appellant at which time they discussed their plans to commit a robbery. The record further discloses that on the evening the robbery took place she furnished to Johnson a hat which was to be used to hide Johnson's identity. Wilson admitted she was present when holes were cut in the hat to provide a means of sight through the hat which was to be pulled down over the face of Johnson. Wilson also furnished gloves to Johnson which were intended to prevent Johnson's fingerprints from being found at the scene of the robbery. It is admitted by Wilson that her automobile was used as

---

*v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *State v. Evans*, 278 Md. 197, 362 A.2d 629 (1976) and *State v. Grady*, 276 Md. 178, 345 A.2d 436 (1975), concluded that constitutional due process was not violated by imposing the burden of proof by a preponderance of the evidence upon a party who sought to have a witness declared to be an accomplice.

transportation to and from the scene of the murder and robbery. When Johnson and the appellant sought to dispose of incriminating evidence upon their return from the robbery and murder, by burying the evidence in the woods, Wilson warned the appellant to "make sure you get rid of the stuff." The "stuff" was the bloody ski cap and gloves which were brought back to her house by Johnson. The record discloses that she was the person who actually provided the container in which the gloves and ski cap were placed for disposition.[3]

From our reading of the record it seems clear to us that there was at least sufficient evidence to generate the issue whether the witness was an accessory before the fact. While it is true that Ms. Wilson sought to exculpate herself by stating that she furnished the hat and gloves because she was afraid of Johnson and that she did not participate in the crime in any way does not mean that the jury was obligated to believe her.

On this record there was evidence, or rational inferences from the evidence, from which the jury could conclude that the witness was an accessory before the fact and was therefore an accomplice. The ultimate test of legal sufficiency, whether to permit an issue to go to the jury or to the trier of facts, is whether the admissible evidence either shows directly, or circumstantially, or supports a rational inference of facts from which the fact finder *could* fairly be convinced that the witness was in fact an accomplice of the defendant. We agree that the appellant was *not entitled* to a judgment of acquittal on the ground that Wilson was an accomplice of the appellant and that there was insufficient corroboration of her testimony. We conclude, however, that the trial court committed reversible error when it

---

**3.** While this evidence is primarily admissible to illustrate whether her conduct made her an accessory after the fact, which is not dispositive of the claim that she was an accomplice, we believe the trier of the facts would be entitled to consider her subsequent conduct as a means of measuring her intention when she originally furnished the ski hat and gloves before the robbery and murder.

refused to instruct the jury on the law of accomplices and to submit the issue to the jury as fact finder to determine whether Ms. Wilson was in fact an accomplice of the appellant and whether there was sufficient corroboration of her testimony.

### (2), (3), and (4)

As we are required by the facts and the law of this case to reverse the judgments returned by the jury, we decline to consider the issues concerning the State's use of rebuttal evidence, the use of hearsay evidence under the conspiracy exception to the hearsay rule.

So far as the final issue is concerned, *i.e.,* whether the evidence was sufficient to require the court to submit the case to the jury, it is clear to us that from the state of the evidence there was a rational basis upon which *any* trier of the facts could find the appellant guilty beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 860 (1979). We shall therefore remand the case to the Circuit Court for Baltimore County for a new trial.

JUDGMENTS REVERSED, CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE COUNTY FOR NEW TRIAL, COSTS TO BE PAID BY BALTIMORE COUNTY.