594 A.2d 625
**Chris Lamont BURROUGHS**
**and**
**Rodney Hampton**
v.
**STATE of Maryland.**
No. 1484, Sept. Term, 1990.
Court of Special Appeals of Maryland.
Sept. 3, 1991.

232

Nancy S. Forster, Asst. Public Defender (Stephen E. Harris, Public Defender on the brief for appellant, Burroughs), Baltimore, Stanley E. Baritz (Mark W. Oakley on the brief for appellant, Hampton), Rockville, for appellants.

Diane E. Keller, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Alexander Williams, Jr., State's Atty. for Prince George's County Of Upper Marlboro, on the brief), for appellee.

Argued before WILNER, C.J., and MOYLAN and MOTZ, JJ.

MOYLAN, Judge.

This appeal basically involves the handling of a defense claim that a key State's witness was a criminal accomplice and that his testimony should, therefore, have been subjected to the special strictures imposed upon that category of inherently suspect evidence. The appellants, Chris Lamont Burroughs and Rodney Hampton, were convicted by a Prince George's County jury, presided over by Judge Audrey E. Melbourne, of murder aggravated to the first degree by virtue of a premeditated intent to kill, of the

same murder alternatively aggravated to the first degree by virtue of its having been committed during the attempted perpetration of an enumerated felony, of two counts of attempted armed robbery, and of the use of a handgun in the perpetration of a crime of violence. Upon this appeal, both appellants raise the following contention:

1. That Judge Melbourne erroneously refused to instruct the jury on the law with respect to the necessary corroboration of the testimony of an accomplice and erroneously failed to submit to the jury the issue of whether the witness John Marshall was an accomplice.

The appellant Burroughs alone raises four additional contentions:

2. That the evidence was not legally sufficient to support his convictions;

3. That Judge Melbourne improperly responded to a question from the jury;

4. That Judge Melbourne erroneously restricted the cross-examination of attorney Gary Neal; and

5. That Judge Melbourne erroneously sentenced Burroughs for both felony-murder and premeditated first-degree murder with respect to the death of a single victim.

The key issue is the joint contention raised by both appellants. Its resolution hinges upon the answer to the question of whether, on the evidence produced before the jury in this case, the witness John Marshall was either 1) a possible accomplice, as a matter of fact, or 2) a non-accomplice, as a matter of law.

The appellants timely requested "an instruction on accomplice testimony." Presumably, they were asking for the boilerplate admonition that the testimony of an accomplice should be viewed with caution and that if the jury found John Marshall to be an accomplice, they should not return a verdict of guilty unless they found adequate independent corroboration of his testimony. Judge Melbourne declined to give the instruction, ruling, as a matter of law, that the

appellants had not met their burden of production and had not, therefore, generated a genuine jury issue.

By way of brief factual background, the murder victim and the second attempted robbery victim, James "Boo" Carter and Clarence Sykes, went to the vicinity of the Penn Southern apartment complex in Prince George's County at approximately 5 A.M. on Saturday morning, September 2, 1989, to purchase cocaine. After making the purchase, they were approached by two men brandishing black handguns and were ordered to lie down on the ground. Sykes complied but, "Boo kept going, he kept going and he said 'You all ain't getting nothing from me.' " While the two gunmen argued with Carter, Sykes "saw his chance" and ran. He heard a number of shots and learned the next day that Carter had been killed. Sykes was unable to make an in-court identification of either assailant. He effectively repudiated, moreover, an arguable photographic identification of the appellant Hampton attributed to him by the police.

The only witness to identify the appellants as the gunmen was John Marshall. He testified that at shortly before 4 A.M. on that morning, he and two other individuals had gone to a carry-out restaurant near the apartment complex. After getting their carry-out fare, they sat on a wall talking to the two appellants. Marshall saw Carter and Sykes approach the appellants and ask where cocaine could be purchased. He observed the appellant Hampton lead the would-be purchasers toward the apartment complex and saw the appellant Burroughs follow closely. When they all moved back up the hill a short time thereafter, Marshall heard Carter say, "Hell, no, I'm not giving you shit." He heard Hampton reply, "Oh, you're not. You're not going to give me shit," and then saw Hampton "fire two shots at the man." As he himself hid behind a railing, Marshall saw the appellant Burroughs and "a guy named Tony" in the vicinity of Sykes. When Sykes ran, Marshall saw the appellant Burroughs fire at him.

Marshall observed the two appellants drive away and the individual named "Tony" run toward the apartment com-

plex with a gun in his hand. Marshall picked out both appellants from a photographic array and, moreover, identified both at trial. Although the testimony of Clarence Sykes established the *corpora delicti*, John Marshall was essentially the State's entire case as to criminal agency.

Accomplice Status:

*The Allocation of the Burden*

■ The burden of proving that John Marshall was an accomplice was indisputably upon the appellants. That burden of proof in its larger sense comprehends the initial and lesser burden of going forward (of producing a *prima facie* case), lest the trial judge, as here, rule as a matter of law that no genuine issue of fact had been generated. "We believe it to be fundamental that a party who seeks to attack the credibility of a witness has the burden of going forward." *Bennett v. State*, 283 Md. 619, 627, 392 A.2d 76 (1978). Even when a defendant successfully meets this initial burden of production, however, he then, albeit entitled to have a jury consider the matter, assumes the further burden of persuading that jury by the preponderance of the evidence standard that the witness is, indeed, an accomplice. "The trial courts and the Court of Special Appeals have consistently recognized as the rule that the burden of proving by a preponderance of the evidence that a witness is an accomplice is on the defendant asserting it. They have applied it, and we have not repudiated it . . . We deem it to be the rule in this State." *Bennett v. State*, 283 Md. at 623, 392 A.2d 76. That secondary burden of persuasion, of course, is not before us in this case because the appellants did not meet their threshold burden of production.

The first Maryland case to consider the allocation of the burden of proof was *Lusby v. State*, 217 Md. 191, 141 A.2d 893 (1958). Adopting the position espoused by 7 *Wigmore, Evidence* (3d ed. 1940), § 2060(e), *Lusby* held, at 217 Md. 201, 141 A.2d 893, "And, of course, 'the burden of *proving* the witness to be an accomplice is . . . upon the party alleging it [the defendant] for the purpose of invoking the

rule.' " (brackets in original). Maryland has adhered unde-viatingly to that position. *Campbell v. State,* 221 Md. 80, 84–85, 156 A.2d 217 (1959) ("It is clear that the burden of proving a witness is an accomplice is on the defendant who asserts it."); *Strong v. State,* 261 Md. 371, 376, 275 A.2d 491 (1971) ("The burden of showing that a witness is an accomplice is on the accused."); *Bennett v. State,* 283 Md. 619, 622–623, 392 A.2d 76 (1978).

This Court has consistently adhered to the position that the burden is on the defendant to prove the fact of accom-pliceship by competent evidence just as any other fact would have to be proved. As Judge Orth pointed out for us in *Burley v. State,* 5 Md.App. 469, 473, 248 A.2d 404 (1968):

"The fact that a witness is an accomplice *must be shown by proof, like any other fact,* but the burden of proving that a witness is an accomplice is on the defendant who asserts it." (emphasis supplied).

In *Sutton v. State,* 10 Md.App. 353, 357, 270 A.2d 497 (1970), Chief Judge Murphy not only reconfirmed that allo-cation of the burden to the defendant but pointed out that our job of determining, on appellate review, the establish-ment *vel non* of a *prima facie* case is that of analyzing the legal sufficiency of the evidence:

"With respect to the procedure to determine complicity, we recited that the burden of proving a witness was an accomplice rested upon the accused asserting it, although the proof need only be by the preponderance of the evidence to the satisfaction of the trier of the facts. *The function of the Court of Special Appeals on appeal is a matter of the sufficiency of the evidence.*" (emphasis supplied).

*See also Gardner and Maple v. State,* 6 Md.App. 483, 494–495, 251 A.2d 901 (1969); *Gaskins v. State,* 7 Md.App. 99, 103, 253 A.2d 759 (1969); *Early v. State,* 13 Md.App. 182, 187, 282 A.2d 154 (1971); *Rivenbark v. State,* 58 Md.App. 626, 634, 473 A.2d 1329 (1984) ("The burden of showing that a witness is an accomplice is on the accused.").

In *Bennett v. State,* 283 Md. 619, 624–627, 392 A.2d 76 (1978), the Court of Appeals went further and held that the Maryland practice of placing both the initial burden of production and the ultimate burden of persuasion on the defendant as to this issue in no way offends the due process clause of the Fourteenth Amendment as interpreted by *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) and *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). Judge Orth observed, at 283 Md. 626–627, 392 A.2d 76:

"Proof by a defendant that a State's witness is an accomplice involves no shifting of the burden to him to disprove any fact essential to the offenses charged since whether or not the witness was an accomplice bears no direct relationship to any element of robbery with a deadly weapon or the use of a handgun in the commission of a felony. That is, the fact that Fritz was an accomplice *vel non* was not a fact necessary to constitute the crimes with which Bennett was charged. It was not even an affirmative defense or an exculpatory or mitigating circumstance affecting the degree of culpability or the severity of punishment. Nothing was presumed or implied against Bennett. Whether Fritz was an accomplice went only to Fritz's credibility."

The Court of Appeals concluded, at 283 Md. 627, 392 A.2d 76, "[P]lacing the burden on a defendant to prove that a witness against him is an accomplice has no constitutional proscriptions and is pursuant to the existing rule of this State."

## Accomplice Status:

### The Subject Matter of the Burden

Having considered *"Who* must prove?," we turn attention to the related issue *"What* must be proved?" When the Court of Appeals first considered the question in *Watson v. State,* 208 Md. 210, 117 A.2d 549 (1955), Judge Delaplaine explained, at 208 Md. 217, 117 A.2d 549:

"The test for determining whether a person is an accomplice of a defendant charged with a felony is whether he could be indicted *and punished* for the crime charged against the defendant." (emphasis supplied).

*See also Strong v. State,* 261 Md. 371, 377, 275 A.2d 491 (1971).

In *Foster v. State,* 11 Md.App. 40, 46, 272 A.2d 810 (1971), *rev'd on other grounds,* 263 Md. 388, 283 A.2d 411 (1971). Chief Judge Murphy stated for this Court:

"[T]he generally accepted test as to whether a witness is an accomplice is whether he himself could be convicted for the offense, either as a principal or accessory before the fact."

*See also Grimes v. State,* 4 Md.App. 607, 609, 244 A.2d 456 (1968); *Burley v. State,* 5 Md.App. 469, 472, 248 A.2d 404 (1968); *Gardner and Maple v. State,* 6 Md.App. 483, 495, 251 A.2d 901 (1969) ("The evidence was not sufficient to show that [the alleged accomplice] was a principal in the crime or an accessory before the fact."); *Gaskins v. State,* 7 Md.App. 99, 104, 253 A.2d 759 (1969) ("We think it too clear to require discussion that there was evidence before the jury from which it could properly conclude that Gardiner was a principal, either in the first or second degree and, as such, was an accomplice."); *Sutton v. State,* 10 Md.App. 353, 357, 270 A.2d 497 (1970); *Early v. State,* 13 Md.App. 182, 187, 282 A.2d 154 (1971); *Rivenbark v. State,* 58 Md.App. 626, 634, 473 A.2d 1329 (1984).

## Accomplice Status:

### Levels of Proof

Having now considered "*Who* must prove?" and "*What* must be proved?," we turn attention finally to "*How* strongly or weakly may it be proved?" A defendant's attempted proof of a witness's criminal complicity may come to rest at any of three levels, with varying degrees of advantage to his case. It was of these three progressively higher plateaus of proof and their escalating consequences that we

spoke in *Trovato v. State*, 36 Md.App. 183, 188, 373 A.2d 78 (1977):

> "Upon the spectrum of proof, three distinct bands are discernible. The two at either extreme of the spectrum are the domain of the judge in his capacity to make rulings of law. Within this domain, the judge does not weigh the evidence or apply any burden of [persuasion]. He rather takes that version of the facts most favorable to the party against whom the adverse ruling is contemplated and decides whether those facts 1) do not establish the necessary elements of the thing needing to be proved by that party [the defendant] or 2) are so clear and decisive that reasonable minds could not differ in resolving the question against that party [the State].[1] There is a broad intermediate zone, however, wherein reasonable minds might differ as to the facts and wherein different readings of those facts would dictate very different legal results. This band in the middle is the unfettered domain of the fact finder with the prerogative to resolve genuine factual disputes in either direction. Each band has its own set of legal consequences."

What then are the three sets of consequences that attend the respective situations where the proof is 1) legally compelling, 2) genuinely disputed and 3) legally insubstantial?

### A. *Legally Compelling:*

The best of all worlds for a defendant, of course, is that wherein the judge has ruled, as a matter of law, that the

---

1. This status as "the party against whom the adverse ruling is contemplated" is not a constant but shifts as we move from the band at one end of the spectrum to that at the other end. It is the defendant who is the party suffering the adverse ruling and who is foreclosed from arguing that a witness is an accomplice when the judge rules, as a matter of law, that a *prima facie* case to that effect has *not* been made. It is, on the other hand, the State that is the party suffering the adverse ruling and that is foreclosed from *denying* that a witness is an accomplice when the judge rules, as a matter of law, that the status of the witness as an accomplice has been incontestably established. At either end of the spectrum, the judge is, in effect, rendering, in one direction or the other, a directed verdict as to a sub-issue.

witness is indeed an accomplice. The legal consequences of such a ruling were described in *Trovato*, at 36 Md.App. 188–189, 373 A.2d 78:

> "At one end of the spectrum, in that band least favorable to the State and most favorable to the accused, the proof would be so clear and decisive that reasonable minds could not differ in finding that the witness was an accomplice. In such a situation, the State would be vulnerable to a motion for a judgment of acquittal at the end of the State's case and, in a jury trial, at the end of the entire case, if the witness's testimony had not been adequately corroborated. In a court trial, the accused would be entitled to an acquittal. In a jury trial, even if the accomplice testimony were *prima facie* corroborated so that the motion did not go against the State, the defendant would still be entitled to an instruction, upon proper request, to the effect that the witness was an accomplice, as a matter of law, so as to require the jury to find for themselves independent corroboration."

Analogizing the degree of proof that would be required to justify ruling, as a matter of law, that a witness was an accomplice to proof of guilt in a criminal trial, Judge Lowe observed in *Bishop v. State*, 39 Md.App. 384, 390, 385 A.2d 1206 (1978):

> "[T]he court must find, in effect, that the testimony was so conclusive that, were a directed verdict of guilty available in a criminal trial, and had the witness been the party charged with the crime, it would have been the witness's fate to have such entered against him."

The proof of accomplice status in this case did not remotely aspire to so lofty a plateau. The appellants, indeed, do not presume even to suggest that they were entitled to a ruling that the witness John Marshall was, as a matter of law, an accomplice.

*B. Genuinely Disputed:*

What the appellants did aspire to was the right to take to the jury the issue of accompliceship. Had they been so

entitled, there would have come into play the set of consequences described by *Trovato,* at 36 Md.App. 189–190, 373 A.2d 78:

"In the middle of the spectrum, we are in a world of fact and not of law, a world wherein the fact finder and not the judge reigns supreme. Within this band, neither the State nor the defendant is entitled to the resolution of a factual question, with its attendant legal consequences, as a matter of law. The state of the proof is sufficiently equivocal to permit the fact finder, in his unfettered discretion, to find that the witness either was or was not an accomplice. The defendant is not entitled to a judgment of acquittal, on the one hand, but he is entitled to a jury instruction on the subject of corroboration, on the other hand."

The appellants failed, however, to reach this intermediate level, for reasons to be discussed as we point out how their proof never got off the ground.

## C. Legally Insubstantial:

The best of all worlds for the State is that described by *Trovato,* at 36 Md.App. 189, 373 A.2d 78:

"At the far end of the spectrum, in that band least favorable to the accused and most favorable to the State, the proof would be so clear and decisive that reasonable minds could not differ in finding that the witness was not an accomplice. The accused here would not even be entitled to a jury instruction on the subject of corroboration because the judge could and should properly declare the witness to be a non-accomplice, as a matter of law."

On the issue of whether a witness is an accomplice, the burden of production that is cast upon a defendant is that of producing *competent evidence* that establishes a *prima facie* case—that is, a legally sufficient case—of criminal complicity. In ruling upon whether that burden of production has been met, the trial judge will take that

version of the evidence most favorable to the defendant and all reasonable inferences that can be drawn therefrom.

■ The analysis of legal sufficiency in this less traditional setting may be better understood by analogizing it to the indistinguishable analysis of legal sufficiency in the more familiar context of a criminal prosecution. The burden of production cast upon the defendant in proving that a witness is an accomplice is precisely the same as the burden of production that would be cast upon the State if it were prosecuting the witness for the crime and were confronted by a motion for a judgment of acquittal.[2] In a nutshell, if the witness John Marshall had been prosecuted on the evidence in this case, would that evidence have been legally sufficient to have permitted the State's case, over Marshall's objection, to go to the jury? The answer is a resounding, "No!"

Only two witnesses, John Marshall himself and the victim Clarence Sykes, gave any testimony as to the occurrence of the crime itself. Marshall's own testimony clearly established his role as a non-involved observer, who was simply present near the crime scene along with three or four other non-involved persons. Sykes's testimony expressly ab-

---

**2.** As far as the burden of production is concerned, the two situations would be indistinguishable. In a criminal trial, of course, the State would be obligated to prove criminal complicity by the "beyond a reasonable doubt" burden of persuasion, whereas the defendant is only obligated to prove a witness's criminal complicity by the "bare preponderance of the evidence" burden of persuasion. The shifting of the standards of persuasion, however, has no effect upon the burden of production, which is a constant in both situations. It was of this that we spoke in *Trovato v. State, supra,* at 36 Md.App. 187 n. 2, 373 A.2d 78:

"The fact that at his own trial the witness, as a defendant, could only be convicted by proof beyond a reasonable doubt does not generate a distinction between the two situations. As Judge Powers very ably pointed out for this Court in *Fisher v. State,* 28 Md.App. 243, 251, 345 A.2d 110 [1975]:
'In this test of legal sufficiency, the court is not concerned with any burden of proof. A burden of proof is a yardstick used only by the trier of the facts in performing the function of assessing weight and credibility of evidence.'"

solved Marshall of any wrongdoing. Sykes recognized Marshall as "the guy I used to go to school with in Job Corps." As Sykes was running away from the robbers, he saw Marshall on top of the hill. Asked whether Marshall was one of the assailants, Sykes responded, "I'm saying no 'cause it couldn't have been. No way, there could have been no way that he could have got on the top of the hill before I did." The only other known witnesses to the crime were the appellants themselves, neither of whom testified.

Two defense witnesses, Christopher Glenn and Joseph Herrell, established that Marshall robbed Herrell of a pair of tennis shoes at about 12:30 A.M. that morning, approximately four-and-a-half hours before the crime in this case, in the same general vicinity. This "other crimes" evidence would not, under any evidentiary theory, have been relevant to show Marshall's complicity in the murder and the attempted robberies at 5 A.M.

This is all the *evidence* there was connecting Marshall with the crimes. Were Marshall tried on such evidence, it is self-evident that he would walk out of the courtroom at the end of the State's case. By parity of reasoning, that which is legally insufficient to establish criminal complicity for purposes of proving guilt is equally legally insufficient to establish criminal complicity for purposes of labeling a witness as an accomplice.

What the appellants are trying to do is to establish Marshall's criminal complicity on the basis of *non-evidence.* Their entire argument in this regard is based upon the fact that Marshall was initially indicted as a codefendant and only had the charges against him *nolle prossed* just prior to his testimony at trial. In brief and in oral argument, both sides have engaged in tedious haggling over the reason for the *nolle pros.* The State maintains that, based upon Sykes's version of events, the evidence was not legally sufficient to go forward with the charges against Marshall. The appellants maintain that the *nolle pros* was simply part of a "deal" in exchange for Marshall's testimony. We decline to wrangle with the appellants over this issue be-

cause it does not make any difference what the reason for the *nolle pros* may have been.

It is boilerplate that an indictment is not competent evidence of criminal complicity nor is a non-witness's opinion as to an individual's guilt. Were the defense, therefore, to proffer that the entire State's Attorney's Office, all twenty-three members of the grand jury, and every member of the Prince George's County Police Department was prepared to swear to the firm conclusion that Marshall was guilty of all the crimes for which he had been indicted, such second-hand conclusions, not based upon what those functionaries had seen with their own eyes or heard with their own ears, would be demonstrably incompetent as evidence.

Conclusions by non-witnesses are not evidence; arguments are not evidence; theories of complicity are not evidence. The burden of producing legally sufficient evidence cannot be satisfied by offering non-evidence. We affirm the ruling of Judge Melbourne that the appellants were not entitled to have the jury speculate over whether the witness Marshall was an accomplice whose testimony needed corroboration.

### Legal Sufficiency of the Evidence

The remaining four contentions are those of the appellant Burroughs alone. The first of these is a conditional legal sufficiency argument. Burroughs argues that *if* John Marshall was an accomplice, *then* there was not legally sufficient independent evidence to corroborate his testimony and that the case, therefore, should not have gone to the jury. Although Burroughs neglects to tell us whether he made a timely motion for a judgment of acquittal at the close of the entire case, it hardly matters. Because the condition on which the conditional argument is based has been held not to exist, the argument contingent upon that condition evaporates.

### The Response to a Question from the Jury

At the conclusion of the State's case-in-chief, the jury sent out a note asking the court to "repeat the deal

made with John Marshall for his testimony." Although, as we have held, Marshall's possible status as an accomplice was not a material issue for the jury to consider, his possible bias as a witness was a very pertinent consideration and any "deal" made with the State had a direct bearing thereon.

Judge Melbourne explained to the jury that when the trial resumed on Monday morning, the court would call as a State's witness, Gary Neal, who was John Marshall's attorney. Judge Melbourne explained that Mr. Neal would "straighten this out for the jury." Prior to Mr. Neal's subsequent taking of the stand, Judge Melbourne again gave the jury a prefatory explanation:

"Ladies and gentlemen of the jury, on Friday one of you asked what the deal was as to John Marshall, the second witness in this particular case, who was also indicted along with these two, and the deal, if you want to call it that, was that there was insufficient evidence to go forward with John Marshall's case, and therefore the deal was that the State, right before he testified, the State would nol-pros, which is legal terminology meaning not prosecute, or drop the charges as to John Marshall, in exchange for his testifying truthfully at trial."

With respect to possible witness bias, both Judge Melbourne's explanation and the subsequent testimony of Mr. Neal made it clear that John Marshall was testifying pursuant to an agreement with the State and that he would receive the benefit of having all charges against him *nolle prossed.* Nothing was kept back from the jury bearing on possible bias and Burrough's contention really does not go to that.

The objection that Burroughs lodged following Judge Melbourne's prefatory explanation and the present contention hinge exclusively on Judge Melbourne's allusion to the fact that "there was insufficient evidence to go forward with John Marshall's case." The argument is that it was erroneous for the court to reveal its opinion "of a question of fact which the jury is to pass on." *Coffin v. Brown*, 94

Md. 190, 203, 50 A. 567 (1901). *See also Elmer v. State,* 239 Md. 1, 10–11, 209 A.2d 776 (1965). This argument is mooted because, as we have held, the possible complicity of Marshall was not "a question of fact which the jury [was] to pass on."

### An Evidentiary Ruling on Cross–Examination

■ When Gary Neal was on the stand as a court's witness, he explained the agreement pursuant to which John Marshall would testify for the State and the State would *nolle pros* the charges against John Marshall. On cross-examination, Burroughs' counsel asked, "Prior to that finalized deal, do you remember what the State's last offer was?" Judge Melbourne sustained the State's objection to this question. What Burroughs sought to elicit was clear, as he explains in his appellate brief:

"The obvious import of this question was to show the jury that, although, as the court told the jury, the State dropped charges against Marshall due to insufficient evidence, the State may nevertheless have attempted to obtain a guilty plea to lesser charges from Marshall. This would certainly have thrown into question the State's contention, and the court's instruction, that charges were dropped for insufficient evidence."

The fact that the State may still have hoped to obtain a guilty plea to lesser charges is offered to prove that the State thought Marshall was guilty. As we have already explained, whatever the State thought about Marshall's criminal complicity, one way or the other, was incompetent as evidence. The objection was properly sustained.

### On Counting Convictions

■ The appellant Burroughs finally complains that he should not have received two sentences of life imprisonment for one murder. The State agrees that this is so. We agree as well.

Our only chagrin is that both Burroughs and the State suggest as the cure for this multiple sentence the solution of merger. This is simply not a problem calling for merger. Merger is a phenomenon that involves two or more convictions for two or more separate, albeit related, crimes. A conviction for a lesser included offense, for instance, is sometimes subsumed into a conviction for a greater, inclusive offense.

That is not the situation here. Burroughs only killed one person, James "Boo" Carter. Having killed only one person, Burroughs committed only one murder. That murder, to be sure, may be found to have been an aggravated one for punishment purposes. There are various ways in which murder can be aggravated upward to the first degree. The modes of aggravation, moreover, are not mutually exclusive. When a jury finds that more than one theory of aggravation has been established, that is nothing more than an insight into the jury's decisional process for determining the appropriate level of blameworthiness and does not double the number of convictions. In homicide cases, the units of prosecution are dead bodies, not theories of aggravation.

Burroughs did not murder James "Boo" Carter twice and there are not, therefore, two convictions capable of merging into each other. It is rather the case that a second sentence for a single crime is redundant.

JUDGMENTS AFFIRMED; SECOND SENTENCE OF LIFE IMPRISONMENT FOR MURDER AGAINST APPELLANT BURROUGHS VACATED AS REDUNDANT; COSTS TO BE DIVIDED EQUALLY BETWEEN THE APPELLANTS.