GLENN JOSEPH TROVATO *v.* STATE OF
MARYLAND

[No. 1054, September Term, 1976.]

*Decided May 17, 1977.*

The cause was submitted on briefs to MOYLAN, POWERS and MOORE, JJ.

Submitted by *Paul F. Harris, Jr.*, for appellant.

Submitted by *Francis B. Burch, Attorney General, Gilbert Rosenthal, Assistant Attorney General, Warren B. Duckett, Jr., State's Attorney for Anne Arundel County*, and *James W. Dryden, Assistant State's Attorney for Anne Arundel County*, for appellee.

MOYLAN, J., delivered the opinion of the Court.

This case involves the distinction between two measures of proof — 1) that which is legally sufficient to permit a result and 2) that which is so conclusive and decisive as to require a result.

The appellant, Glenn Joseph Trovato, was convicted in the Circuit Court for Anne Arundel County by Judge Matthew S. Evans, sitting without a jury, of burglary and larceny. His appellate arguments boil down to the single contention that a State's witness, Paul B. Johnson, Jr., was an accomplice, as a matter of law, so as to have compelled a judgment of acquittal because of the lack of corroboration of his testimony.

On March 17, 1975, the office of Chris Coile and Associates, Inc., was burglarized and looted. Two calculators and a typewriter were stolen. The key testimony implicating the appellant was that of Roy Junior Hines, an admitted and undisputed accomplice. Hines described how he, the appellant and one Bruce Dotson broke the window of the burglarized premises and stole the office machinery. He described having hidden the stolen goods in his own car trunk, how the appellant later received $100 for selling the stolen typewriter and how the appellant turned over $25 of those proceeds to Hines. Since Hines was unquestionably an accomplice, the evidence against the appellant would not have been legally sufficient to sustain a conviction unless the testimony of Hines was corroborated by non-accomplice evidence.

The key witness in that regard was Paul B. Johnson, Jr. Nothing linked Johnson to the burglary itself. Johnson's own testimony, however, revealed that he had inquired of the appellant about obtaining a typewriter for Johnson's employer. The appellant indicated that he "would work on it." Johnson testified that a few days later, a typewriter was placed in his car and he subsequently paid the appellant $100 for it. Johnson's testimony was sufficiently damning to himself to indicate that he was quite possibly a knowing receiver of stolen goods. He was employed by the Future Carpet Company as a laborer. His employer told him that he wanted to purchase a typewriter. Johnson asked the appellant if he knew where he could get a typewriter. The appellant replied that he did not but "would check around and see." Several days later, the appellant advised Johnson that he had located a typewriter. Johnson told the appellant to "leave it in the car, in my car." Johnson there found the IBM typewriter and took it to his employer who paid him $100. The next evening, Johnson turned over the $100 to the appellant. Johnson admitted that he knew that the appellant was a mechanic with no access to business equipment. He admitted that he knew that the appellant had a criminal record. He admitted that when he bought the typewriter, he suspected that it was stolen. His possible, or even probable, guilt as a receiver of stolen goods is not the issue for present purposes, however.

The law is clear that a receiver of stolen goods is not, *ipso facto,* an accomplice of the thief. The person who is the receiver may be an accomplice, but not by virtue of his act of receiving. If the man who is the eventual receiver also happens to be the one who instigated and procured the theft, then he is an accomplice. This is so not because he is coincidentally the receiver but, more significantly, because he is independently an accessory before the fact.[1] That is the critical act of participation that makes him an accomplice.

---

1. His status as a receiver does not make him an accomplice but neither does it preclude him from being an accomplice.

The law in this regard is clear-cut. In *Gardner and Maple v. State*, 6 Md. App. 483, 495, 251 A. 2d 901, we said:

"Nor is a receiver of stolen goods an accomplice of a thief unless they conspire together in a pre-arranged plan for one to steal and deliver to the other and pursuant to such plan one does steal and deliver to the other ... No such plan was here shown. We hold that [the witness] was not an accomplice."

In *Osborne v. State*, 4 Md. App. 57, 61-62, 241 A. 2d 171, we stated both the general rule and its exception:

"While the rule is that a thief and a receiver are not accomplices ..., an exception to that rule is recognized when the thief and the receiver of stolen property conspire together, or enter into a pre-arranged plan, for one to steal and deliver the property to the other; and pursuant to such plan, one does steal and deliver to the other."

At issue is not Johnson's possible status as a receiver of stolen goods but his possible status as an accessory before the fact to the theft. His own testimony is all we have in that regard. Focusing in upon his actions before the fact of the larceny, the testimony is equivocal. There may have been possible "larceny in his heart," but he and the appellant had not, according to the testimony, agreed upon a clear and direct course of action. Johnson asked the appellant if he knew where he could get a typewriter. The appellant replied that he did not but "would check around and see."

"An accomplice is one who knowingly, voluntarily, and with common criminal intent with the principal offender unites with him in the commission of the crime, either as a principal or as an accessory before the fact." *Foster v. State*, 11 Md. App. 40, 46, 272 A. 2d 810; *Watson v. State*, 208 Md. 210, 117 A. 2d 549. In the present case, we conclude that there was a genuine factual question in this regard and that the issue was, therefore, properly referred to the fact finder in his fact-finding capacity. We are in that zone whereof

former Chief Judge Murphy spoke in *Foster v. State, supra,* at 11 Md. App. 46:

> "We have held repeatedly that when evidence relating to whether a witness is an accomplice is capable of being determined either way and justifies different inferences in respect thereto, the question is for the determination of the trier of fact and in a jury case should be submitted to the jury with proper instructions. *Christopher v. State,* 9 Md. App. 277; *Gaskins v. State,* 7 Md. App. 99; *Burley v. State,* [5 Md. App. 469]."

We agree with the appellant that the evidence was legally sufficient to have permitted a finding that Johnson was an accomplice. The test for legal sufficiency in this regard is precisely what it would be if Johnson himself were on trial and we were measuring the legal sufficiency of the evidence to sustain his conviction. "[T]he generally accepted test as to whether a witness is an accomplice is whether he himself could be convicted for the offense, either as a principal or accessory before the fact." *Foster v. State, supra,* 11 Md. App. at 46; *Sutton v. State,* 10 Md. App. 353, 270 A. 2d 497.[2]

To say that Johnson *might* be an accomplice on these facts is not, however, to say that he *must* be an accomplice on these facts. The permissibility of such a finding would simply entitle the appellant in a jury trial to an instruction, upon proper request, to the effect that if the jury found the witness to be an accomplice, they must then find independent corroborative evidence linking the appellant to the crime. The fact that the evidence was legally sufficient to permit the finding that the witness was an accomplice does not imply that the evidence could not also have been

---

2. The fact that at his own trial the witness, as a defendant, could only be convicted by proof beyond a reasonable doubt does not generate a distinction between the two situations. As Judge Powers very ably pointed out for this Court in *Fisher v. State,* 28 Md. App. 243, 251, 345 A. 2d 110:

> "In this test of legal sufficiency, the court is not concerned with any burden of proof. A burden of proof is a yardstick used only by the trier of the facts in performing the function of assessing weight and credibility of evidence."

legally sufficient to permit the finding that the witness was not an accomplice. The fact finder was entitled to resolve that question either way. Therefore, the appellant was not entitled to a judgment of acquittal, for the reason that the fact finder *could* have found, within his prerogative, that the witness was not an accomplice so as to require corroboration. Upon that permitted finding, the total evidence in the case was legally sufficient to sustain the verdict. The ultimate test of legal sufficiency, whether to permit the case to go to the jury in a jury trial or to save the judge from being declared clearly erroneous in a court trial, is whether the admissible evidence either shows directly, or circumstantially, or supports a rational inference of, facts from which the fact finder *could* fairly be convinced, beyond a reasonable doubt, of the defendant's guilt of the offense charged. *Williams v. State,* 5 Md. App. 450, 459, 247 A. 2d 731; *Metz v. State,* 9 Md. App. 15, 23, 262 A. 2d 331.

Upon the spectrum of proof, three distinct bands are discernible. The two at either extreme of the spectrum are the domain of the judge in his capacity to make rulings of law. Within this domain, the judge does not weigh the evidence or apply any burden of proof. He rather takes that version of the facts most favorable to the party against whom the adverse ruling is contemplated and decides whether those facts 1) do not establish the necessary elements of the thing needing to be proved by that party or 2) are so clear and decisive that reasonable minds could not differ in resolving the question against that party. There is a broad intermediate zone, however, wherein reasonable minds might differ as to the facts and wherein different readings of those facts would dictate very different legal results. This band in the middle is the unfettered domain of the fact finder with the prerogative to resolve genuine factual disputes in either direction. Each band has its own set of legal consequences.

What are these sets of legal consequences where the issue is that of the possible status of a witness as an accomplice so as to require corroboration of his testimony? At one end of the spectrum, in that band least favorable to the State and

most favorable to the accused, the proof would be so clear and decisive that reasonable minds could not differ in finding that the witness was an accomplice. In such a situation, the State would be vulnerable to a motion for a judgment of acquittal at the end of the State's case and, in a jury trial, at the end of the entire case, if the witness's testimony had not been adequately corroborated. In a court trial, the accused would be entitled to an acquittal. In a jury trial, even if the accomplice testimony were *prima facie* corroborated so that the motion did not go against the State, the defendant would still be entitled to an instruction, upon proper request, to the effect that the witness was an accomplice, as a matter of law, so as to require the jury to find for themselves independent corroboration. By way of analogy to the civil law, if the burglarized company were bringing a civil suit against a Paul Johnson, it, as plaintiff, would be entitled to a directed verdict in its favor.

At the far end of the spectrum, in that band least favorable to the accused and most favorable to the State, the proof would be so clear and decisive that reasonable minds could not differ in finding that the witness was not an accomplice. The accused here would not even be entitled to a jury instruction on the subject of corroboration because the judge could and should properly declare the witness to be a non-accomplice, as a matter of law. Again by way of analogy to the civil law, if the burglarized company were bringing a civil suit against a Paul Johnson upon such a set of facts, he, as civil defendant, would be entitled to a directed verdict in his favor.

In the middle of the spectrum, we are in a world of fact and not of law, a world wherein the fact finder and not the judge reigns supreme. Within this band, neither the State nor the defendant is entitled to the resolution of a factual question, with its attendant legal consequences, as a matter of law. The state of the proof is sufficiently equivocal to permit the fact finder, in his unfettered discretion, to find that the witness either was or was not an accomplice. The defendant is not entitled to a judgment of acquittal, on the one hand, but he is entitled to a jury instruction on the

subject of corroboration, on the other hand. Again, by way of analogy to the civil law, if the burglarized company were bringing a civil suit against a Paul Johnson upon such a set of genuinely disputed facts, neither the plaintiff nor the defendant would be entitled to a directed verdict in its favor. Involved, rather, would be a genuine jury question.[3]

In the present case, we stand upon such disputed middle ground. If the fact finder found, as was his right, that Paul Johnson was not an accomplice, then Paul Johnson's testimony needed no corroboration. In such an eventuality, the total evidence was legally sufficient to sustain the verdict. The judge, as fact finder, was not, therefore, clearly erroneous in returning a verdict of guilty. *Williams v. State, supra; Metz v. State, supra.*

*Judgments affirmed; costs to be paid by appellant.*

---

**3.** For a somewhat similar analysis where the defensive question was one of entrapment, see *Fisher v. State, supra,* at 28 Md. App. 248-251. Therein, Judge Powers took the three measures of proof: 1) legally insubstantial, 2) genuinely disputed and 3) legally compelling and assessed the impact of each measure of proof upon the questions of motions for a judgment of acquittal and requested jury instructions.