# JOHN OWEN BISHOP *v.* STATE OF MARYLAND

[No. 1071, September Term, 1977.]

*Decided May 12, 1978.*

The cause was argued before MOYLAN, LOWE and MASON, JJ.

*Julian B. Stevens, Jr.,* with whom were *Walter D. Murphy, Jr.,* and *Rullman & Stevens* on the brief, for appellant.

*Sally B. Gold, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Robert C. Ozer, Assistant Attorney General,* on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

This case is remarkable, if at all, not so much for the law involved as for the prominence of its actors, who include a Bishop (John Owen), two pawns and a knave. At play, the bishop is a miter-shaped chessman that is empowered to make diagonal movements across any number of unoccupied spaces on a chessboard — and takes whatever lies in its path. Although a very dangerous piece, because of its directional limitations it is more effective when working with others, and, because its distance movements are unrestricted, it is more effective when obscured in the background, letting other pieces face the danger of confrontation.

It is in just such a role that the State sees the appellant, John Owen Bishop. He was accused in the Circuit Court for Anne Arundel County (and convicted by a judge sitting as factfinder) of bribing Alford Robus Carey, Jr. (the then Executive Director of the School Construction Committee), and of assisting Carey in receiving bribes. Bishop was sentenced to five years imprisonment, but unlike the recipient of his questionable largess, he was not confined.[1] However, he was fined $10,000 and required to restore to the State that which he, or his designee, received from the illegal transactions.

---

1. His prison sentence was suspended.

But we are not asked to decide here which was the more morally culpable and pecuniarily avaricious — he who gave or he who received — we are asked only to decide whether the testimony of the two persons through whom Bishop moved was sufficient to convict him in the absence of independent corroboration of their testimony.[2]

One of the two persons, George Hargest, is conceded here to have been an accomplice in the criminal sense, leaving the corroborative problem revolving about the other person, Vernon Morton. The nature of the record is such that Morton's testimony, though it varied in some aspects from that of Hargest, clearly corroborated it. As pointed out by the trial judge, however, the combined testimony of these two men manifestly demonstrated the guilt of the appellant Bishop. But if Morton is an accomplice, *Harriday v. State,* 228 Md. 593, 599, makes it clear that his testimony cannot be corroborated by another accomplice's testimony.

Appellant progresses his evidentiary contentions in a short series of moves by which he hopes swiftly to place the State in check, vulnerable to his final move mating the State on grounds of evidentiary insufficiency. He suggests (and we agree) that without the testimony of the two immunized participants in the bribery scheme the remaining evidence would be insufficient to convict him. He then contends that both Hargest and Morton are accomplices in the scheme and that there is no independent evidence sufficient to corroborate their testimony, despite the fact that very little of such evidence is required. *Brown, supra,* at 244. While our review of the record would cause us to take issue with the allegation that there is no other corroborative evidence,

---

2. It has recently been reaffirmed by the Court of Appeals in Brown v. State, 281 Md. 241, 244, that there must be some independent corroborative evidence — minimal though it need be — to establish, with some degree of cogency:

    1) the identity of the accused with the perpetrator of the crime, or
    2) the participation of the accused in the crime itself.

sequentially we do not reach that question because appellant's attack does not progress beyond his gambit,[3] *i.e.,* that because of his participation and immunization Morton is an accomplice as a matter of law. Because we hold that the evidence is not such as to indicate that Morton is an accomplice as a matter of law, Bishop's attack is unable even to sacrifice his pawn, and he never reaches the second phase of his gambit, which would require our quantitative evaluation of whether other evidence sufficiently corroborated Morton's testimony.[4]

Appellant argues initially that reasonable minds could not differ on the question of whether Morton was an accomplice and urges that Morton be so proclaimed as a matter of law (citing *Trovato v. State,* 36 Md. App. 183, 189). Failing that, he would bind the State to its position taken during argument on the motion for judgment of acquittal at the close of the case, wherein the State explicitly (although parenthetically) conceded that both Hargest *and* Morton were accomplices, and argued simply that there was other corroborative evidence.

— the "concession" —

Looking at appellant's contentions inversely, the record reveals the State's "concession" as follows:

" . . . and I might say that there is no contention that Mr. Morton and Mr. Hargest are not accomplices for the purpose of needing corroboration. We are not about to contend that people who have knowingly participated in a bribery scheme are not accomplices

---

**3.** A "gambit" is an opening chess move in which one or more pawns are offered in exchange for a favorable position.
**4.** Corroboration of the testimony of Hargest and-Morton, if such were needed, need only be slight. Brown v. State, *supra,* at 244.

to it, so our contention is not corroboration is unnecessary but rather that ample corroboration exists."

It appears that appellant's argument (that such concessions are binding upon the trial judge) rests upon cases that deal with the binding effect of attorneys' stipulations, *e.g., Salisbury Beauty Schools v. St. Bd.,* 268 Md. 32, 45-46, or those cases submitted upon "admissions at the bar", *e.g., Bloom v. Graff,* 191 Md. 733 (a reference which, in that case, related to the amount of damages "stipulated and agreed between counsel". *Id.* at 735-736). Both of the cases cited, however, deal solely with stipulations read into the record during the evidentiary phase of the trial. That is a far cry from a negative concession made prefatory to argument (*i.e.,* a statement of what will not be contended), which is obviously made for the purpose of quickly passing less persuasive points to reach, and emphasize, those which counsel feels are more in his favor. See generally *Wanzer v. State,* 202 Md. 601, 608.

Citing 2 Jones, *Evidence* (6th ed.), § 13:34, and presumably still contending that this argumentative "concession" was an evidentiary admission of fact, appellant argues that he was prejudicially misled into not putting on evidence, and that the concession operated as a fraud upon him. This argument is hardly convincing since the record reflects no objection, request to reopen the case, or similar protest when the State submitted a memorandum three days later in which it expressly withdrew its "concession". Indeed, appellant acknowledged — and replied argumentatively to — that memorandum in his own memorandum, apparently having accepted the concession for what it was without decrying its withdrawal. If the State's "ill-advised concession" operated as a fraud, appellant's silent submission to the changed posture kept the trial judge from taking action to correct any prejudice such as is now claimed. Furthermore, had appellant's subsequent silence been motivated by having descried the potential appellate argument, it was a judicial sandbag that belies his present claims of being fraudulently misled to his prejudice.

Whatever motivated his acquiescence, appellant had every opportunity to speak out and seek remedial action, either by written memorandum or in open court when the verdict was handed down after having been held *sub curia.* We will not, at this late hour, entertain his present complaints which hint at, but do not directly address, the serious charge of prosecutorial misconduct by intentionally misleading appellant to his detriment. Md. Rule 1085; *Lohss and Sprenkle v. State,* 272 Md. 113, 118-119.

— a factfinder's decision —

The State's case, sketchily stated, was that Alford Carey had provided State contracts for Globe Industries in exchange for which he received cash payments. These payments were initially arranged for by Bishop during a meeting in North Carolina at which he first approached Morton. Upon meeting adamant refusal by Morton, Bishop demanded, and Morton arranged for him, to meet with Morton's employer, George Kane.

As a result of instructions given to Morton by Kane, Morton began paying Hargest commission checks. Although Hargest was entitled to commissions as a representative of materials manufacturers for Globe, his checks from Globe were used as a conduit through which Carey's payoffs were conveyed. The commissions were inflated, the checks cashed and the proceeds shared with Carey in progressively increasing amounts. This procedure was arranged by Bishop at the Carolina meeting and was subsequently shepherded by him, with the pecuniary increments being made at his instance throughout the continuation of the scheme.

Acknowledging for purposes of this appeal that Hargest is an accomplice as has been conceded [5] by the State, we must address appellant's contention that Morton is an accomplice "as a matter of law". To so hold, all of the testimony related thereto must be so clear and decisive that reasonable minds could not differ in reaching that conclusion. *Trovato, supra,* at 188. Since the generally accepted test of whether a witness

---

5. But for the concession it may not be so as a matter of law. The issue was not addressed to us and we make no such holding.

is an accomplice is whether he could be convicted for the offense charged against the defendant, either as principal or accessory before the fact, *Watson v. State,* 208 Md. 210, 217, the court must find, in effect, that the testimony was so conclusive that, were a directed verdict of guilty available in a criminal trial, and had the witness been the party charged with the crime, it would have been the witness's fate to have such entered against him. However:

> "When the evidence relating to whether or not a witness is an accomplice is capable of being determined either way and justifies different inferences in respect thereto, the question is for the determination of the trier of fact and in a jury case should be submitted to the jury with proper instructions. 2 Wharton's *Criminal Evidence, supra,* § 446, pp. 225-226. See cases cited in 23 C.J.S., *Criminal Law,* § 796c, p. 20, notes 31-34. So when a witness connected with the crime committed testifies to facts exculpating him or by his testimony endeavors to show his innocent intention or denies criminal complicity, his relation to the crime becomes a question for the determination of the trier of fact. Therefore, our function on appellate review, when the question is properly before us, is a matter of the sufficiency of the evidence. In a case tried by the court sitting as a jury, we determine whether the court was clearly wrong in its judgment on the evidence, Md. Rule 1086; in a case tried by a jury, we determine whether the court erred in submitting the evidence to the jury, Md. Rule 755. Cases in this jurisdiction support what we have said as to the determination of the complicity of a witness and as to our function on appeal." (footnote omitted). *Burley v. State,* 5 Md. App. 469, 473-474.

The interpretive potential of the testimony is not, as a matter of law, restricted to the rigid contours maintained by appellant. To the contrary, we found not only the testimony inferentially flexible, but the argument logically persuasive

that at worst Morton knew or should have known that his otherwise usual and legitimate role of issuing commission checks was likely to be the conduit for suspect payments to Carey. Furthermore, because a factfinder could have reasonably decided that notwithstanding that implicit suspicion, Morton's participation — even so limited — was involuntary and without the prerequisite criminal intent, the question is one of fact and not of law. See Anno., Accomplices — Questions of Law or Fact, 19 A.L.R.2d, 1352, 1381. Judge Childs' opinion set forth certain factual findings which support his conclusion.

> " . . . from Wigmore in 2060 supplement page 135 it is manifest that a person acting under duress is not an accomplice because he could not be convicted of his participation in the crime charged. Under Maryland law an accomplice is defined as one who knowingly voluntarily and with common criminal intent with the principal offender unites with him in the commission of a crime either as principal or as an accessory before the fact, and this is from *Butler vs. State,* 19 Md. Appeals, 601, *Watson vs. State,* 208 Md., pg. 210, tested under these standards it appears to the Court that Morton did not [participate] voluntarily or with criminal intent — in his testimony he twice stated emphatically that he did not voluntarily participate in the scheme. When first approached by Mr. Bishop he adamantly refused to make payments to Carey. This refusal provoked a heated exchange between the two and was only after he was instructed to do so by his employer, Mr. Kane, who at the time was protecting his one hundred seventy-five thousand dollar investment in Globe Industries, that he agreed, that is Mr. Morton agreed, to the arrangement whereby Carey was to be paid through the means of a portion of George Hargest's commissions said by Hargest to be approximately one-half of the net."

We agree with the holding of the trial judge implicit in his

denial of the appellant's motion for judgment of acquittal, that a reasonable factfinder (in this case the same judge) could decide that Morton's conduct was without criminal intent and amounted to an involuntary submission to participate with blinders in a scheme initiated by, and for the benefit of, others. There was no evidence that he participated for ill-gotten gain, despite his apparent awareness (or at least strong suspicion) that the scheme was in being and that his otherwise proper conduct aided in its completion. Morton's initial refusal to participate and his subsequent reluctant participation followed only upon instructions from his employer after the arranged meeting with appellant relating to the payment of commissions and manner of invoicing. Moreover, he thereafter protested at least twice. Such deprecatory reluctance to participate in an otherwise legitimate — if suspect — act, together with an inferential fear of losing his employment by refusing his employer's directives, without illicit gain or common purpose, constitutes sufficient evidence to raise the voluntariness issue to a question of fact. It would have been error to rule otherwise.

> "We have held repeatedly that when evidence relating to whether a witness is an accomplice is capable of being determined either way and justifies different inferences in respect thereto, the question is for the determination of the trier of fact...." *State v. Foster,* 263 Md. 388, 393-394, *cert. denied,* 406 U. S. 908; *Williams v. State,* 19 Md. App. 582, 594, *cert. denied,* 271 Md. 747.

And see *Trovato v. State, supra,* 36 Md. App. at 187-188.

Thus, without regard to the absence of a prerequisite mens rea, the issue here regarding the coercion to participate is itself one of degree only. If after refusal, Morton's life had been overtly threatened, there would be no question that such threat would give rise to a jury question. See Anno., *supra,* at 1358. So it is, although to a far lesser degree, when his livelihood has inferentially been threatened. A reasonable man (the judge as factfinder) decided the issue against appellant. The issue was properly before him and we do not find his decision to have been clearly erroneous. Md. Rule

1086. Since Morton was found by the factfinding judge not to be a voluntary accomplice, his testimony not only required no corroborating, it served to corroborate Hargest.

Finally, we find that the record does not support appellant's two-sentence contention that despite our affirmance that Morton was not an accomplice, the evidence was so contradictory as to be insufficient. The testimony of Hargest and Morton, if believed, was overwhelmingly conclusive of Bishop's guilt despite some inconsistencies.

And so it is as often happens, despite their limitations, the pawns who have been lined up by the more powerful pieces to buffer them (and are themselves subsequently offered for sacrifice), provide no protection at all, and, indeed, bring the game to its ultimate conclusion.

*Judgments affirmed.*
*Costs to be paid by appellant.*