28 A.3d 1226

**Enrique Pizzaro SILVA**

v.

**STATE of Maryland.**

**No. 126, Sept. Term, 2010.**

Court of Appeals of Maryland.

Sept. 21, 2011.

18

---

Piedad Gomez, Assistant Public Defender (Paul B. DeWolfe, Public Defender, Baltimore, MD), on brief, for Petitioner.

Carrie J. Williams, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

BARBERA, J.

Petitioner Enrique Pizzaro Silva [1] was convicted by a jury in the Circuit Court for Baltimore County of two counts of first-degree premeditated murder.  At trial, the State called three witnesses who were present at the crime scene:  William Salmeron, Jose Arnold Castillo, and William Flores.  Salmeron was an admitted accomplice to the murders;  both Castillo and Flores denied involvement.  Petitioner asked the trial court to instruct the jury that all three witnesses were accomplices as a matter of law, and, consequently, their testimony linking Petitioner to the murders required corroboration in order to be credited.  The trial court granted Petitioner's request insofar as it applied to Salmeron, but denied it with respect to Castillo and Flores.  The court explained that the evidence was not sufficient to deem either Castillo or Flores an accomplice as a matter of law;  therefore, it was for the jury to determine whether Castillo and Flores were in fact accomplices, and if so, whether their testimony was corroborated.

Petitioner noted a timely appeal to the Court of Special Appeals where he argued, among other issues not before us, that the trial court erred by refusing to instruct the jury that Castillo and Flores were accomplices as a matter of law.  The Court of Special Appeals, holding that the trial court had correctly denied Petitioner's requested jury instruction, affirmed the convictions in an unreported opinion.

We granted certiorari to consider whether the Petitioner was entitled to have the jury be instructed that Castillo and Flores were accomplices as a matter of law.  We hold that Petitioner was not entitled to the requested instruction.  We therefore affirm the judgment of the Court of Special Appeals.

---

1. Petitioner's counsel alerted this Court that the correct spelling of Petitioner's name is Enrique *Pizarro* Silva, not Enrique *Pizzaro* Silva as indicated by the case name.

## I.

Petitioner was tried on charges of the premeditated murder of Herrim Geovanny Alverez Salmaron and Hever Joel Gonzalez Garcia (hereinafter "the victims").[2] The evidence adduced at trial established the following:

On January 7, 2006, a group of MS–13 gang members encountered the victims at "Club Mate," a Baltimore nightclub. The MS–13 members were Petitioner, Carlos Garcia, William Salmeron, Carlos Lizama, Jose Hernandez–Aguilar, and an individual known only as "Lonely." Garcia, believing that the victims were members of a rival gang, "18th Street," reminded Petitioner and the other MS–13 members that, according to gang rules, they were required to attack all 18th Street gang members on sight, so they had an obligation to make the victims "disappear." Salmeron, who testified as one of the State's lead witnesses, testified that Castillo and Flores, neither of whom was an MS–13 member, were also among the MS–13 members when Garcia made his announcement. Both Castillo and Flores testified at trial that they were good friends of Salmeron and knew of his gang affiliation.

Around closing time, the MS–13 members, together with Castillo and Flores, left the club with the two victims. The autopsy reports, admitted into evidence at trial, indicate that both victims were heavily intoxicated. Castillo rode in Salmeron's car, and Flores drove his car with Petitioner, Garcia, and the two victims as passengers. During the drive, Salmeron spoke with Garcia via cell phone to verify that the victims were 18th Street gang members. Salmeron also testified that, during the conversation, Petitioner got on the phone and said, "Yeah they 18th Street." Satisfied, Salmeron eventually parked his car next to the athletic field at Arbutus Middle

---

**2.** When referring to the victims by name, we will use their first names to avoid confusion. Hever Garcia has the same surname as another actor in this case and Herrim Salmaron's surname is similar to the surname of State's witness William Salmeron. Additionally, the record does not make clear the order in which Herrim and Hever were killed. As a result, we will refer to the victims as "first victim" and "second victim."

School in Arbutus, Maryland. Flores parked his car on the opposite side of the street, facing the other direction. Flores later testified that the location looked like a "lonely place."

According to Salmeron, everyone in his car, including Castillo, walked to the athletic field. Meanwhile, Petitioner and Garcia removed the first victim from Flores's car, taking him by the hand and leading him down some steps onto the field. Flores testified that he and an unidentified person remained in his car with the second victim, who, apparently still intoxicated, was asleep in the back seat.

Salmeron testified that, as soon as the first victim was brought to the field, Petitioner and Garcia began stabbing him. Salmeron, Lizama, and Lonely soon joined in the assault. While the attack occurred, Flores testified that he repositioned his car so that it was on the same side of the road and facing in the same direction as Salmeron's car. Shortly after, Petitioner and Garcia returned to Flores's car, awoke the second victim, and pulled him out of the car by his hair. Petitioner and Garcia dragged the second victim onto the field, where he too was stabbed to death.

Salmeron initially testified that Castillo stabbed the second victim, but later retracted that statement, testifying that he did not know if Castillo "had stabbed somebody or not" because he had returned to his car "when the second victim got pulled out." Toward the end of his testimony, Salmeron stated that neither Castillo nor Flores participated in the actual stabbings. The bodies of both victims were left on the athletic field.

Petitioner, the other MS–13 members, and Castillo and Flores drove to the house of Victor Argueta (another MS–13 member). There, Petitioner, the other MS–13 members, and Castillo changed out of bloody clothing, and gave the clothing to Argueta to be destroyed. Flores testified that he remained in his car and did not enter Argueta's house. The following day, Flores cleaned the blood from his car.

When questioned on direct and cross-examination about their participation in the murders, both Castillo and Flores

denied having knowledge of the plan to murder the two victims. Castillo repeatedly testified that, despite hearing Garcia talk, both in the nightclub and in the car, about making the two victims "disappear," he did not think that Petitioner and the other MS–13 members would kill the victims. He also explained that he decided to get into Salmeron's car, despite having heard Garcia talk about harming the victims, because "I had nobody [sic] to take me home" and "I didn't even know that [they would kill two people]."

Likewise, Flores repeatedly denied that he was aware of the plan to murder the victims. He testified that he intended to go home after leaving the club, but Salmeron asked him to drive Petitioner, Garcia, and two people (ultimately, the victims in this case) to a party because they could not all fit in Salmeron's car. Flores testified that when they reached his car Garcia was treating the two victims "like they were old friends ... they were hugging each other." Flores also testified that, despite what Salmeron said, he had not overheard Garcia speak of his plan to murder the victims at the club, and, despite Garcia's discussing the plan on his cell phone in Flores's car, he could not hear what was said. Flores added that, "if I had known they were going to commit a homicide, then I would have refused to take the person there in my car."

It was Petitioner's theory that Castillo participated in the murders by acting as a lookout. Castillo, however, was equivocal on the subject. At one point during cross-examination, Castillo denied having said anything about being a lookout. Yet, immediately thereafter he testified: "I went right over there to the bottom of the step, and they tell [sic] me to look out so that no cars coming [sic]." He further explained: "I was looking upstairs and saw no cars coming down ... when ... they grabbed the [second victim], and he tried to run and he got hit by a bat ... and they start stab [sic] him." He then stated that, "[w]hen there was a car coming and everything, they were, like, everything done [sic], and we just get [sic] into the car and left from that place." Shortly after, however, when Petitioner's counsel asked, "you knew what

was going on .... you knew what was about to happen," Castillo replied, "[t]hey just told me [to look for cars,] I didn't know, but they were already stabbing the victims."

Flores also denied participating in the murders. He testified that he remained in his car during both murders and did not hear or see anything. When asked about the first victim being taken onto the field, Flores responded that he was not concerned because Garcia had been hugging the victim at the club, "so I never imagined that they were going to do something like that, but that's what happened. I don't know why." Flores also testified that he did not attempt to drive away when Petitioner and Garcia returned to his car covered in blood, because there "was another person in the [car]. I couldn't go, [sic] because they were going to kill me anyway. What could I do?" He testified that he asked: "Why are you going to do something to [the second victim] if he is not doing anything but sleeping?" To that, someone outside the car replied, "Why are we going to leave a witness?" Flores also testified that after the second victim was murdered he heard Garcia tell the other MS–13 members that they would let Flores live because he was Salmeron's cousin.[3] Flores admitted to driving the MS–13 members to Argueta's house following the murders but added that he stayed in his car. When asked why he destroyed evidence the following day, Flores stated: "I cleaned my car. I couldn't leave blood in my car."

Finally, both Castillo and Flores testified that they had not seen Petitioner before the night of the murders. Castillo testified that he did not know Petitioner's name. Flores testified that he knew Petitioner as "El Diablo," but he could not positively identify Petitioner when the police showed him a photo line-up. When Petitioner's counsel asked Flores about his uncertainty while talking to the police, Flores explained that he was now able to make a positive identification of Petitioner "because it's not the same to see a person in a picture than to see a person in person."

---

3. Flores later testified that he is not Salmeron's cousin.

At the close of the State's case, Petitioner's counsel made a motion for judgment of acquittal. He argued that Salmeron, Castillo and Flores were accomplices as a matter of law whose testimony had not been corroborated. The State conceded that Salmeron was an accomplice as a matter of law because Salmeron previously admitted his participation in the murders. The State opposed the motion, however, arguing that the evidence regarding Castillo's and Flores's complicity was not clear and, even if all three were accomplices, their testimony was corroborated both by cell phone records placing Petitioner, Garcia, and Salmeron near Arbutus Middle School at the time of the murders, and by the security video of Club Mate's parking lot showing Petitioner with the MS–13 gang members and the two victims on the night of the murders.

The trial court denied the motion for judgment of acquittal. The court reasoned that, although the evidence showed Salmeron to be an accomplice as a matter of law, the evidence regarding Castillo's and Flores's complicity was not clear enough to decide the issue as a matter of law; consequently, questions of their complicity as accomplices and, if so, whether there was corroboration of their testimony must be answered by a jury.

Petitioner rested without putting on a defense case. He then renewed the motion for judgment of acquittal, re-raising the arguments he had made at the close of the State's case. The trial court again denied the motion, stating:

> [T]his Court does not find based on the testimony that there's sufficient evidence as a matter of law to find that [Castillo and Flores] were accomplices, and I will not so find. But I do feel based on the testimony and examination that there's sufficient evidence to make it a jury question, therefore, that issue will go to the jury.

The court instructed the jury, pursuant to MPJI–Cr 3:11, "Testimony of Accomplice." The instruction has two parts: "A" instructs, *inter alia,* that a particular witness was an accomplice; and "B" instructs, *inter alia,* that a particular witness may have been an accomplice. The court instructed the jury in pertinent part, pursuant to "A", that Salmeron

"was an accomplice," and, pursuant to "B", that Castillo and Flores "may have been accomplices." The court further instructed the jury that they must decide whether Petitioner proved by a preponderance of the evidence that Castillo and Flores were accomplices, and, if so, whether their testimony was corroborated.[4]

The jury found Petitioner guilty on both counts of first-degree murder. The court imposed upon Petitioner two concurrent life sentences without the possibility of parole. Petitioner subsequently noted an appeal to the Court of Special Appeals.

### The Appeal

On appeal to the Court of Special Appeals, Petitioner alleged that the trial court erred in denying Petitioner's request

---

4. The trial court instructed the jury, with regard to Castillo and Flores, as follows:

> You have also heard testimony from Arnold Castillo and William Flores who may have been accomplices. An accomplice, as I said before, is one who knowingly and voluntarily cooperated with, aided, advised or encouraged another person in the commission of a crime.
>
> The burden of proof as to whether Arnold Castillo or William Flores were accomplices is on the Defendant. The standard for this burden of proof is preponderance of the evidence. To prove something by preponderance of the evidence means to prove that something is more likely so than not so. In other words, a preponderance of the evidence means such evidence which when considered and compared with the evidence opposed to it has more convincing force and produces in your mind a belief that it is more likely true than not true.
>
> In determining whether a party has met their burden of proof, you should consider the quality of all the evidence regardless of who called the witness or introduced the exhibit and regardless of the number of witnesses that one party or the other may have produced.
>
> If you believe that the evidence is evenly balanced on that issue, meaning whether or not Mr. Castillo or Mr. Flores are accomplices, then your finding on that issue must be against the party who has the burden of proof.
>
> If you are not convinced that Arnold Castillo and William Flores were accomplices, you should treat that testimony as you would treat the testimony of any other witness. On the other hand, if you are convinced that Arnold Castillo and William Flores were accomplices, you must then decide whether their testimony was corroborated before you may consider it.

to instruct the jury that Castillo and Flores were accomplices as a matter of law.[5] According to Petitioner, he was entitled to the instruction because the evidence clearly showed that both Castillo and Flores were aware of the plan to murder the victims and served in the participatory roles of lookout and getaway driver, respectively.

The State disagreed. The State pointed out that both witnesses repeatedly denied prior knowledge of the planned murders; Castillo also denied acting as a lookout, and Flores denied acting as a getaway driver. The State argued that, because reasonable minds could differ as to whether the evidence established that Castillo and Flores were accomplices to the murders, it was for the jury to decide as a matter of fact.

The Court of Special Appeals, in an unreported opinion, upheld the trial court's denial of Petitioner's requested instruction and affirmed the judgments of conviction. The intermediate appellate court reasoned that there were "conflicts in the evidence" relating to whether Castillo and Flores were accomplices. The court concluded:

> Because the evidence at trial relating to Castillo and Flores was capable of multiple interpretations and inferences, the [trial] court did not err when it failed to conclude that Flores and Castillo "in some way advocate[d] or encourage[d] the" murders or that they participated in the murders "knowingly, voluntarily, and with common criminal intent with the principal offender[s]."

(quoting *State v. Raines*, 326 Md. 582, 597, 606 A.2d 265, 272 (1992) (internal citations and quotations omitted)).

We granted a writ of certiorari to consider a single question, which we have rephrased as follows:

---

5. Petitioner raised two additional issues on appeal to the Court of Special Appeals, discussion of which we have omitted because those issues are not before this Court.

**28**

Did the trial court err in refusing to instruct the jury that two key State's witnesses were accomplices as a matter of law whose testimony required corroboration? [6]

## II.

It is well established in Maryland law that " '[t]o be an accomplice a person must participate in the commission of a crime knowingly, voluntarily, and with common criminal intent with the principal offender, or must in some way advocate or encourage the commission of the crime.' " *Raines,* 326 Md. at 597, 606 A.2d at 272 (quoting *Watson v. State,* 208 Md. 210, 219, 117 A.2d 549, 553 (1955)). " '[T]he mere fact that a person witnesses a crime and makes no objection to its commission, and does not notify the police, does not make him a participant in the crime.' " *State v. Foster,* 263 Md. 388, 394, 283 A.2d 411, 414 (1971) (citations omitted). Instead, the person must actually participate by " 'assist[ing], support[ing] or supplement[ing] the efforts of another,' " or, if not actively participating, then the person must be present and " 'advise or encourage the commission of a crime' " to be considered an accomplice. *Id.* at 393, 283 A.2d at 413 (citations omitted). The test commonly used to determine whether a witness was an accomplice is " 'whether the witness could be indicted and/or punished for the crime charged against the defendant.' " *Id.,* 283 A.2d at 413 (citations omitted).

Under Maryland's complicity law, "the spectrum of proof" contains "three distinct bands"—accomplices as a matter of fact, as determined by a jury (or a judge, acting in his or her fact-finder role, at a bench trial), or accomplices as a matter of law *vel non,* as determined by a judge. *Trovato v. State,* 36

---

6. Petitioner's question reads: "Did the trial court err in refusing to instruct the jury that two key State's witnesses were accomplices, where one witness admittedly knew of the perpetrators' intent to 'harm' and 'disappear' the victims and admittedly acted as a 'lookout,' and the other witness admittedly waited in his car while the victims were murdered to enable a getaway?" We chose to rephrase Petitioner's question because, as explained later in this opinion, we disagree that either witness definitively admitted to his participation in the crimes.

Md.App. 183, 188, 373 A.2d 78, 81 (1977). Judge Charles E. Moylan, writing for the Court in *Trovato*, explained those "three distinct bands":

> The two [bands] at either extreme of the spectrum are the domain of the judge in his capacity to make rulings of law. Within this domain, the judge does not weigh the evidence or apply any burden of proof. He rather takes that version of the facts most favorable to the party against whom the adverse ruling is contemplated and decides whether those facts 1) do not establish the necessary elements of the thing needing to be proved by that party or 2) are so clear and decisive that reasonable minds could not differ in resolving the question against that party. There is a broad intermediate zone, however, wherein reasonable minds might differ as to the facts and wherein different readings of those facts would dictate very different legal results. This band in the middle is the unfettered domain of the fact finder with the prerogative to resolve genuine factual disputes in either direction.

*Id.*, 373 A.2d at 81.

We have recognized that, for a judge to take the question of complicity from the jury and make a finding as a matter of law, "the proof must be so clear and decisive that reasonable minds could not differ in coming to the same conclusion." *See In re Anthony W.*, 388 Md. 251, 278, 879 A.2d 717, 732 (2005) (citing *Bishop v. State*, 39 Md.App. 384, 390, 385 A.2d 1206, 1210 (1978) (stating that "the court must find, in effect, that the testimony was so conclusive that, were a directed verdict of guilty available in a criminal trial, and had the witness been the party charged with the crime, it would have been the witness's fate to have such entered against him")). When, however, " 'evidence relating to whether a witness is an accomplice is capable of being determined either way and justifies different inferences in respect thereto, the question is for the determination of the trier of fact and in a jury case should be submitted to the jury with proper instructions.' " *Foster*, 263 Md. at 394, 283 A.2d at 413–14 (citations omitted).

Against this legal backdrop the parties form their arguments.

## III.

Petitioner argues that the trial court erred by denying his request that the jury be instructed that Castillo and Flores were accomplices as a matter of law whose testimony required corroboration. The State counters that the testimony of both men on the subject was not nearly so unequivocal as Petitioner suggests; indeed, the testimony of each included some inconsistencies thereby making the accomplice determination one for the jury to decide. We shall address separately the parties' arguments as to each of the two witnesses.

### *Castillo*

Petitioner contends that Castillo participated "knowingly, voluntarily, and with common criminal intent" in the murders. Petitioner bases that contention, first, on Castillo's testimony that he got into Salmeron's car knowing of the plan to "disappear" the victims. Petitioner also directs our attention to Castillo's testimony that "I went right over there to the bottom of the step, and they tell [sic] me to look out so that no cars coming [sic]," and "[w]hen there was a car coming and everything, they were, like, everything done [sic], and we just get [sic] into the car and left from that place." Petitioner views this testimony as establishing as a matter of law that Castillo admitted his participation in the murders as a lookout and, consequently, an accomplice.

The State concedes that Castillo's testimony was sufficient to generate a question for the jury as to whether he was an accomplice to the murders. The State, though, takes issue with Petitioner's claim that the evidence was so clear and unequivocal as to warrant a finding that Castillo was an accomplice as a matter of law. The State highlights what it considers to be inconsistencies in Castillo's testimony regarding both his purported knowledge of the group's criminal intent as well as his actual participation as a lookout. With respect to knowledge of the murders, the State explains that

there are several reasons why the question was appropriately submitted to the jury. First, Castillo repeatedly testified that, despite overhearing Garcia's conversation, he did not know the group would murder the victims. Second, when asked why he got into Salmeron's car knowing of the plan to "disappear" the victims, Castillo replied that he had no other way of getting home. As for the inconsistencies regarding his participation, the State points to Castillo's response when Petitioner's counsel asked if Castillo acted as a lookout: "I didn't say nothing like that." According to the State, these conflicts in Castillo's testimony must be weighed and balanced by the trier of fact-in this case, the jury. To permit otherwise, the State contends, would allow the trial court to "improperly assume[ ] the jury's role as fact-finder." *Dykes v. State,* 319 Md. 206, 224, 571 A.2d 1251, 1260 (1990).

Petitioner is correct that someone serving as a lookout could be considered an accomplice to a crime. But, evidence suggesting that someone acted as a lookout, as is the case here, is a far cry from evidence that is so "clear and decisive that reasonable minds could not differ in coming to the same conclusion." *In re Anthony W.,* 388 Md. at 278, 879 A.2d at 732.

This Court's reasoning in *Foster* is illustrative. In *Foster,* the petitioner appealed the trial court's denial of his motion for judgment of acquittal, claiming that "the record clearly indicated that both [witnesses,] Smoot and Simms[,] were accomplices and the State presented no corroborative evidence sufficient to find him guilty." 263 Md. at 393, 283 A.2d at 413. The evidence adduced at trial indicated that Smoot knew the petitioner was angry with the victim for "putting the police on his trail," but she did not participate in the murder because she was asleep in the car. *Id.* at 392, 283 A.2d at 412–13. With regard to Simms, who was also under indictment for the murder of the victim, the evidence indicated that, although he handed the gun to the petitioner when the petitioner asked to see it, he remained in the car during the shooting. *Id.* at 392, 283 A.2d at 413. Based on the evidence, this Court rejected the petitioner's claim that the trial court erred in denying his

motion for judgment of acquittal. *Id.* at 395, 283 A.2d at 414. Explaining our decision, we stated that, from "the testimony of Simms which exculpated Smoot and Smoot's testimony (which) exculpated Simms, the jury could conversely decide that either or both, were not accomplices. Therefore, the trial judge was correct in denying the [petitioner's] motion for judgment of acquittal." *Id.*, 283 A.2d at 414 (internal quotation marks omitted).

We agree with the State that the evidence adduced at trial regarding Castillo's knowledge and participation in the murders of the two victims, like the evidence in *Foster*, is open for interpretation by the jury, particularly given its inconsistencies. At one moment in his testimony, Castillo admitted that he overheard Garcia discuss the plan to "disappear" the two victims; at the next, Castillo denied knowledge that the group would actually harm the two men. Castillo explicitly denied that he acted as a lookout, but he also described how he stood at the bottom of the steps when the group told him to look out for cars.

These inconsistencies in Castillo's testimony are precisely what precludes a finding that he was an accomplice as a matter of law. *See Trovato*, 36 Md.App. at 187, 373 A.2d at 81 ("To say that Johnson [a State's witness] *might* be an accomplice ... is not, however, to say that he *must* be an accomplice...."); *Williams v. State*, 19 Md.App. 582, 595, 313 A.2d 700, 708 (1974) (holding that "[t]he record did not establish that [the witness] was an accomplice as a matter of law" because "the jury could find, as [the witness] testified was the case, that he was unaware of any intent and purpose by [the defendants] to kill [the victim]"); *People v. Basch*, 36 N.Y.2d 154, 365 N.Y.S.2d 836, 325 N.E.2d 156, 159 (1975) (holding that the trial court properly left the issue of complicity to the jury because, "[a]lthough one of the perpetrator's told [the witness] to act as a 'lookout' and he waited for them to come back, there is no proof that he agreed to such an arrangement or did actually so act").[7]

---

7. Petitioner attempts to distinguish *Basch* by stating that, unlike the witness in that case, Castillo admitted that he accepted the role of a

Although we agree with Petitioner that a reasonable jury may well find that Castillo participated in the murders, we also recognize that a reasonable jury may conclude otherwise. We therefore agree with the Court of Special Appeals that the trial court properly denied Petitioner's request that Castillo be deemed an accomplice as a matter of law.

### *Flores*

■ Petitioner argues two evidentiary theories, which, in his view, demonstrate Flores's complicity in the murders, as a matter of law. Petitioner's first theory is based on Flores's transporting the victims to the field where they were killed. Relying on Salmeron's testimony that Flores was present when Garcia announced the plan to "disappear" the victims, Petitioner alleges that Flores participated in the victims' murders "knowingly, voluntarily, and with [the] common criminal intent" of the group.

The State counters that Flores's knowledge is not clear because Flores testified that he thought he was driving Petitioner, Garcia, and the victims to a party. The State also argues that whether Flores knew of the group's criminal intent is unclear because, when asked if he knew what was going to happen, Flores responded: "No. I was pretty curious, because [Petitioner and Garcia] treated [the victims] like they were old friends. When they got to my car they were hugging each other, so I never imagined that they were going to do something like that, but that's what happened."

Petitioner's second theory of Flores's complicity was that he "knowingly, voluntarily, and with common criminal intent" waited in the getaway car during the second victim's murder and then drove the group to safety. The State counters that, although the evidence reflects that Flores by that time knew of the murders, his participation in the crime was not definitively shown to have been voluntary. To illustrate this, the State highlights Flores's testimony that he did not drive away

---

lookout and acted as one when he warned the others of an oncoming car. For the reasons we have stated, we disagree with Petitioner.

when he realized that the group intended to murder the victims because there "was another person in the [car]. I couldn't go, because they were going to kill me anyway. What could I do?" The State also refers to Flores's testimony that, after the murder of the second victim, Flores heard the MS–13 members decide to let him live only because the group mistakenly believed that Flores was Salmeron's cousin.

We agree with the State. The jury was free to credit Flores's testimony about his lack of knowledge and fear, and thereby decide that Flores was not an accomplice to the murders. Likewise, the jury could decide that Flores lied. When the evidence that a witness is an accomplice can go either way, it is the role of the fact-finder, in this case the jury, to decide whether to believe the witness. *Foster*, 263 Md. at 394, 283 A.2d at 413–14; *see also Lancaster v. State*, 86 Md.App. 74, 85, 585 A.2d 274, 279 (1991) (stating that the question of the witness's complicity was properly submitted to the jury because the witness's "testimony tended to show that he was not a willing partner but acquiesced because he was afraid ..."). Consequently, we agree with the Court of Special Appeals that the trial court properly denied Petitioner's request that Flores be identified as an accomplice as a matter of law.

### An Additional Theory

Finally, Petitioner argues that Castillo and Flores were accomplices as a matter of law because MS–13 would not allow persons with potential to furnish evidence against them to help with murders unless they were also involved in the gang. To support that notion, Petitioner directs us to Detective Saa's expert testimony that MS–13 uses new recruits as lookouts and getaway drivers during the indoctrination process. Although we agree with Petitioner that the Detective's testimony informs the issue, we do not agree that it is dispositive. In other words, the Detective's testimony supports the notion that Castillo's and Flores's complicity *vel non* should be for a jury to decide, but it does not provide evidence

clear enough to have compelled a determination by the trial court that the witnesses were accomplices as a matter of law.

## IV.

In sum, we hold that the trial court properly denied Petitioner's request that the jury be instructed that Castillo and Flores were accomplices as a matter of law. Accordingly, we affirm the judgment of the Court of Special Appeals.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE PETITIONER.**